2 So.2d 411

**FORD et al. v. BEAM.**

4 Div. 108.

Supreme Court of Alabama.

May 15, 1941.

Rehearing Denied June 5, 1941.

John C. Walters, of Troy, for appellants.

J. C. Fleming, of Elba, for appellee.

BOULDIN, Justice.

Equity jurisdiction extends to proceedings: "To establish and define uncertain or disputed boundary lines, whether the bill contains an independent equity or not." Code of 1923, § 6465, subd. 5, Code 1940, Tit. 13, § 129, subd. 5.

Appellants filed their bill under this statute to settle or establish a disputed boundary line between two residence lots in the City of Troy.

The bill discloses that complainants and respondent are the owners of certain adjoining lots and that the boundary line between them is in dispute. This gives equity to the bill.

The answer in effect admits these facts. Each of the parties sets up what he claims to be the boundary line, disclosing their claims overlap on a more or less defined strip. These averments do not defeat the equity of the bill, but serve the purpose of presenting the contentions of the parties to be determined by the evidence.

Complainants' muniments of title describe their property as lots 21 and 22 as shown by a designated plat of record.

Respondent's chain of title describes his property as a portion of lot 23, adjoining lot 22 according to the same plat. Lot 22 lies west of lot 23.

Upon submission of the cause on pleading and proof, the trial court decreed: "That the complainants be, and are hereby, declared to be the owners of Lots #21 and 22, as recorded in Deed Book O, at page 407, in the Probate Office of Pike County, Alabama," and, thereupon, appointed a commission "to ascertain and fix the boundary line between the said Lots #22 and 23, and to so fix the same according to the Plat recorded in Deed Book O, at page 407, in the Probate Office of Pike County, Alabama."

This commission, one of whom was an engineer, made their report, accompanied with a plat duplicating that mentioned in the decree, locating the boundary line between lots 22 and 23, as per the plat. This report located this line as running through the residence of Mr. Beam, the respondent, placing some 9 feet of his residence in lot 22.

Coming on for hearing on this report and exceptions thereto the court made his finding, saying: "On this report & the facts as disclosed from Complainant's testimony the dispute has existed for fifty three years. One Jolly bought & built a house on lot 23 in 1881, sometime after he sold this lot to Seay & Seale; the widow of Seay, sold it to Freeman & from Freeman to the Bell estate & from the Bell estate to Respondent. No effort has been made by Complainants or their predecessor in title & possession to establish the true line, but with knowledge that a portion of Respondent's house was on the lot of Complainants & has been for fifty three years, they sat idly by & at this late day calls on a court of equity to grant relief which would be unjust & inequitable. How to rescue conplainants' cause from the doctrine of laches is beyond my perception."

Thereupon, it was "decreed that complainants are not entitled to relief and their said bill is dismissed."

We are of opinion the court misapplied the doctrine of laches.

The long acquiescence in the possession of respondent and his predecessors in title went to the question of adverse possession as relates to boundary lines between adjoining proprietors, resulting in divestiture of title to so much of lot 22 as so adversely held; and calling for the fixation of the present boundary line accordingly.

The statutory remedy looks to the settlement of disputed boundary lines for present and future purposes; to give each proprietor the unquestioned enjoyment of his own; to relieve each of the depressing effect of an uncertain or controverted boundary.

The bill should not have been dismissed. The boundary line should have been established in the light of the whole record. Jenkins v. Raulston, 214 Ala. 443, 108 So. 47; Smith v. Cook, 220 Ala. 338, 124 So. 898; Baldwin v. Harrelson, 225 Ala. 386, 143 So. 558; Clarke v. Earnest, 224 Ala. 165, 139 So. 223.

This litigation has been pending nearly six years. The cause was submitted in this court March 29 of the present year. We think it a proper case to here render the decree the lower court should have rendered.

Without discussing the evidence in detail, a careful study of the record brings us to the following conclusions of fact, supported by the weight of the evidence:

1. As before noted the muniments of title all locate complainants' property in sections 21 and 22 as per the recorded plat, and respondent's property as that portion of lot 23, adjoining lot 22. These lots front on Orange Street on the north, and run back southward some 250 feet to an alley. Several of the deeds to respondent's predecessors in title call for a specified number of feet frontage on Orange Street, but none of them specify any monument or other data showing the termini of this north line.

The deed to respondent, Beam, does specify a marker at the northeast corner of his lot, and calls for a specified frontage running west toward the Ford property, but located in lot 23. This deed, if giving color of title to the frontage named, was executed only a year or two before this

suit was filed, and can not be the basis of a claim by adverse possession.

2. Mr. Jolly more than half a century past, not only built the house where Mr. Beam resides, but about the same time erected a fence defining his possession. This fence, if extended to Orange Street, fixed his possession some 12 to 13 feet west of his residence. This fence remained for more than 20 years, and within the memory of many witnesses; some of them successors in title and possession. Complainants admitted in evidence, and concede here, that possession to this fence ripened into title.

3. Soon after Mr. Jolly built, Dr. Ford built his residence on lot 22. He also erected a fence, leaving an open alley between the improvements some 9 to 10 feet wide, which was long used by both parties for ingress and egress to the rear portion of their premises. Much evidence is directed to conflicting claims as to whether this alley was on the Ford property, the Beam property or partly on both. No adverse possession ripened into a title fixing a boundary line by the use of this alley. It was used at will by both.

4. The recorded plat, incorporated by reference in the muniments of title, did not give the dimensions of these lots in figures. This had to be worked out from the scale of the plat, found by the engineers, with the aid of measurements on the ground, to be 160 feet to one inch on the plat. This situation probably contributed to the confusion as to boundaries through the years.

By the weight of the evidence, we are reasonably satisfied that lot 23 did not, at most, extend westward beyond the fence line first erected by Mr. Jolly and long maintained by his successors.

5. Shortly before the bringing of this suit, Dr. Ford erected a new fence. The weight of the evidence is that this new fence is on the line of the old fence first erected by Mr. Jolly, and is now identified and marked by fence posts as shown by photographs in the record.

We find the true line between these adjoining lands now runs along and with this line of posts extended to Orange Street on the north and the alley on the south.

A decree is here entered, and will be certified to the court below, fixing and establishing the boundary line accordingly. The cause will be remanded for further decretal orders by the court below, if desired by either party, causing permanent markers or monuments to be placed at the north and south ends of this line as so established and a report of such monuments be made a matter of record. Let appellee be taxed with the costs of suit and costs of appeal.

Reversed, rendered and remanded.

GARDNER, C. J., and FOSTER and LIVINGSTON, JJ., concur.