161 So.2d 477

**J. M. LAY**

v.

**Malcolm PHILLIPS et al.**

**6 Div. 913.**

Supreme Court of Alabama.

Feb. 20, 1964.

Thos. A. Smith, Jr., Cullman, for appellees.

Bland & Bland, Cullman, for appellant.

HARWOOD, Justice.

This is a boundary line dispute between two coterminous owners.

J. M. Lay filed a bill in equity against the two respondents, Phillips and Harbison alleging that the boundary line between his property and that of respondents is dis-

puted. Lay set out what he contends to be the true line as established by adverse possession and by prescription and petitioned the court to establish such as the true line.

According to the paper title to the properties, the dividing line is the section line which divides section 3 and section 4 of Township 12, South, Range 5, West.

It is Lay's contention that regardless of the true location of the section line, he has acquired title by adverse possession and by prescription on the east up to what is designated as "the old section line" which was pointed out to him as being the section line at the time he acquired land by deed on 8 September 1944.

The old section line at its northern terminus is some 115 feet east of the section line allegedly established by surveys in 1960. In other words, the land in dispute is an extremely elongated triangle one-half mile in length and 115 feet wide at its top.

The complainant, Mr. Lay, testified that he bought his property from Mr. C. E. Calvert in 1944. He and Mr. Calvert walked the east line at the time. It is this east line that is now in dispute. This was understood to be the section line and it was marked by blazes and hatches on trees. The deed which Mr. Lay received from Mr. Calvert was received in evidence. The land is described as being in section 4, Township 12, Range 5, West. The eastern boundary line of this land must therefore be deemed to be the east line of section 4, supra.

Under the undisputed evidence of all witnesses, the land in question belonging to both parties is remote, wild woodland and has never been cultivated. Mr. Lay testified that he has sold timber on this land twice since acquiring it, once in 1946, and again in 1960. On the occasion of one of these sales, he blazed a couple of trees to show the timber cutters how far to go. However, Mr. Lay testified that if one knew where to look one could find old hatch marks on the trees along the old line.

Mr. Calvert who sold the land to Lay, testified that he bought it in 1934 from Durwood Burns. At that time Burns had showed him an old line marked in the woods and that it is the same line to which Lay now claims. Mr. Calvert testified that the land is mostly "a bunch of holes and hollows" and that he sold the timber on it one time.

Other witnesses testified as to the old hatch mark line up to which Lay now claims, though these marks are quite old and one would have difficulty in tracing this line if not familiar with it.

In brief counsel for appellant, Lay, states that "as far as appellant's case is concerned, it is immaterial with our contention where the true section line is. The pleadings do not set out the line claimed by the appellant to be a section line. Appellant describes a line established by prescription and adverse possession. The line claimed by the appellant in the pleadings is described by visible monuments and plainly marked lines on trees through timber land which is the only evidence of the line that is now left, since all three corners on said line, and a great part of the old line, are now covered in places by water."

Section 828, Title 7, Code of Alabama 1940, our adverse possession statute, specifically provides that it does not apply to cases involving a question as to boundaries between coterminous owners. The three alternative prerequisites set forth in Section 828, that is, (1) a deed or other color of title duly recorded for ten years; or, (2) annual listing of the land for taxation in the proper court for ten years, if the land is subject to taxation; or, (3) title by descent cast or devise from a predecessor in title who was in possession of the land, are therefore not necessary to sustain a claim to title by a coterminous owner.

■ The burden upon Mr. Lay, if he is to extend his documentary title, is to show by the required measure of proof that he has been in the actual, clear, notorious, continuous, adverse and exclusive occupancy of the questioned strip for the ten years required by Section 828, supra, or for twen-

ty years if he seeks to establish absolute repose of title in him by prescription.

Counsel for appellant asserts that the appellant does claim title by prescription as well as by adverse possession, and seeks to assert his prescriptive claim by tacking on the right and interest in the land of his vendor, Mr. Calvert. Since the paper title which Lay obtained from Calvert conveyed only land in section 4, and did not describe the land otherwise, it cannot be deemed that Calvert conveyed to Lay any interest in the disputed strip that he may have acquired by adverse possession. Mims v. Alabama Power Co., 262 Ala. 121, 77 So.2d 648. Any interest that Calvert had in the disputed strip therefore cannot be tacked to Lay's interest to make out the required prescriptive period.

We therefore lay aside appellant's claim of prescriptive right since twenty years had not elapsed since his acquisition of his deed in 1944, though under the facts of this case we cannot see that appellant's claim is in anywise affected if his prescriptive claim be thus discarded, in that no question of the tolling of the statute can arise under the evidence.

Our adverse possession statute of ten years (Sec. 828, supra) is a statute of limitations, Cotney v. Eason, 269 Ala. 354, 113 So.2d 512, whereas our rule of prescription of twenty years is a rule of absolute repose. The very term prescription is derived from "Praescriptio" meaning a pre-scribing or former writing, and presupposes a lost grant. Further, the presumption rests not only on the supposition of a lost grant, but on the higher ground that it "conduces to the peace of society, and relieves courts from the necessity of adjudicating rights so obscured by the lapse of time and the accidents of life, that the attainment of truth and justice is next to impossible," Harrison et al. v. Heflin et al., 54 Ala. 552, and the presumption created by prescription precludes judicial inquiry in a title so acquired. Findlay v. Hardwick, 230 Ala. 197, 160 So. 336.

Thus the absolute presumption arising from a right claimed and exercised for twenty years is not subject to being tolled, whereas our statute of adverse possession, being a statute of limitations is so subject under appropriate circumstances.

Under both our adverse possession statute and our rule of prescription, a claimant to succeed, must show his dominion over the real estate, and his adverse holding and claim, to the same degree and extent, that is, under the statute for a period of ten years, and the prescriptive rule for a period of twenty years. Under the statute, unless a coterminous owner, in addition to adverse possession for the required period of ten years, the claimant must also show one of the three alternative conditions precedent, i. e., color of title, or payment of taxes for ten years, or title by descent cast or devise, etc. Neither of these alternative conditions are required to exercise a claim of right by prescription. Ford v. Bradford, 218 Ala. 62, 117 So. 429.

Section 828, however, relieves a coterminous adverse claimant of these three alternative conditions, though under a long line of decisions he may yet acquire title by the exercise of adverse possession for a period of ten years up to the disputed boundary line. McNeil v. Hadden, infra, and cases cited therein.

Thus where the claim is that of a coterminous owner and no question of tolling is involved, no difference can be discerned insofar as effects and results are concerned, whether the claim be under the statute of ten years, or the prescriptive rule of twenty years, other than the difference in the period of time required for the exercise of the one or the other.

In McNeil v. Hadden, 261 Ala. 691, 76 So.2d 160, the rules pertaining to disputes between coterminous owners relative to a mutual boundary line are stated as follows:

"It is established that: 'If two coterminous proprietors agree on a

boundary line, and each occupies to its location, the possession is presumed adverse, and after ten years has the effect of fixing such line as the true one. Turner v. De Priest, 205 Ala. 313, 87 So. 370; Copeland v. Warren, 214 Ala. 150, 107 So. 94; Gunn v. Parsons, 213 Ala. 217, 104 So. 390; Mink v. Whitfield, 218 Ala. 334, 118 So. 559; Smith v. Harbaugh, 216 Ala. 202, 112 So. 914. If a coterminous landowner holds actual possession of the disputed strip under a claim of right openly and exclusively for a continuous period of ten years, believing that he is holding to the true line, he thereby acquires title up to that line, even though the belief as to the correct location originated in a mistake, and it is immaterial what he might or might not have claimed had he known he was mistaken. Smith v. Bachus, 201 Ala. 534, 78 So. 888; Hoffman v. White, 90 Ala. 354, 7 So. 816; Hopkins v. Duggar, 204 Ala. 626, 87 So. 103; Shepherd v. Scott's Chapel, 216 Ala. 193, 112 So. 905.' Smith v. Cook, 220 Ala. 338, 341, 124 So. 898, 900. See Treadaway v. Hamilton, 221 Ala. 479, 129 So. 55; Clarke v. Earnest, 224 Ala. 165, 139 So. 223; Guy v. Lancaster, 250 Ala. 226, 34 So.2d 10."

 The only acts of dominion exercised by Mr. Lay over the remote and unoccupied land which he now claims by adverse possession consisted of twice cutting timber on the land, once in 1946, when he cut only pine trees which were suitable for logs, and again in 1960, when only selected trees were cut. Such casual and desultory acts are insufficient under the doctrines of our cases to establish the necessary dominion over the land as required by adverse possession, and such acts do not divest title out of the true owner. Williams v. Lyon, 181 Ala. 531, 61 So. 299; Green v. Marlin, 219 Ala. 27, 121 So. 19; Bradley v. Hall, 239 Ala. 544, 195 So. 883; Duke v. Harden, 259 Ala. 398, 66 So.2d 899. The appellant therefore failed to establish by proof of the required degree his right by adverse possession to the land involved in the disputed strip.

At the conclusion of the hearing below the court decreed that the true boundary line between the properties of the complainant and respondents to be the section line between sections 3 and 4 of Township 12, Range 5, West, as surveyed by the firm of V. H. Padgett and that said boundary line is as follows:

"A line beginning on South end at a point marked by a concrete landmark established by the Alabama Power Co. and lying at the Southwest corner of the Nora Harbison property and being on the section line as surveyed by V. H. Padgett; thence running north along the line surveyed by V. H. Padgett and plainly marked by iron pins placed along said line to the intersection of said line with the South line of the right of way of the public road leading on to the Phillips Bridge, this being the Northwest corner of the Malcolm Phillips property."

The court further directed V. H. Padgett to establish said line as to true boundary line by erecting stone or iron landmarks in accordance with the provisions of Section 4, Title 47, Code of Alabama 1940, and to report the establishment of said landmarks and their locations to the court.

The appellant argues that the court erred in its location of the true section line as set forth in the decree because of the insufficiency of the evidence to establish such line.

D. J. Farley testified that he was a son-in-law of Nora Harbison, one of the appellees in this case.

Farley, for thirteen years, had been a land surveyor employed by Mr. Padgett.

In early 1960, he surveyed the area for Mr. Lay. His survey started from a rock marker pointed out to him by Mr. Lay, on the east line of Section 4, then down to the southwest corner to establish the corner there. This survey was made from field

notes in the court house and when completed was accepted by Mr. Lay. In October 1960, Farley surveyed the area for the Phillips estate, predecessors in title to the lands of the appellees. Again he had field notes from the court house. No purpose would be served by detailing the technical engineering testimony of Farley as to how he established the line between Sections 3 and 4 in question. Suffice to say that plats made by Farley showing the location of this section line were received in evidence, and Farley testified that in his opinion the section line was correctly shown on the plat.

A surveyor of long experience may sometimes give his opinion as an expert that a line he has surveyed is the true line. Dougherty v. Hood, 262 Ala. 311, 78 So. 2d 324, and cases therein cited.

In addition, B. D. Spillers, a highway engineer with the State Highway Department, and whose qualifications were admitted, testified that he had surveyed the section line in question. This survey was made in connection with a highway construction project. To make this survey he first verified the location of the section line as shown by original field notes of the General Land Office. In running out the east line of Section 4, he found concrete markers of a survey made of the section line by the Alabama Power Company in 1960, in connection with a dam the company was constructing. The section line as determined by him paralleled the Alabama Power Company markers, but the company line was about eighteen inches west of the line as determined by Spillers.

At the time he surveyed the section line, Spillers also noticed, in addition to the power company markers, another set of markers denoting a survey of the section line. This third line ran between the line he surveyed and the power company line. This middle line he later learned was the one marked by Farley.

No quarrel can be found with the lower court's adoption of the Farley, or Padgett line, as designated in the decree. The evidence to support his finding in this regard we deem entirely sufficient, and we are in agreement therewith.

In the proceedings below this case was originally submitted to Hon. K. J. Griffith, Judge of the Circuit Court of Cullman County. After the submission of the testimony and evidence, Judge Griffith recused himself. Thereafter, Hon. Edward N. Scruggs, Judge of the Circuit Court of Marshall County, was appointed by the Chief Justice to consider and decide the case on the record. Arguments were had before Judge Scruggs, and briefs submitted, and after study of the record and consideration of the arguments and briefs, Judge Scruggs entered his decree. Not having heard the witnesses, Judge Scruggs' decree comes before us without any presumption of correctness as to his conclusions on the facts. We have reviewed this record in this light, and conclude that the decree is correct and should be affirmed.

Affirmed.

LIVINGSTON, C. J., and SIMPSON and MERRILL, JJ., concur.