This appeal and cross-appeal is from a decree of the Circuit Court of DeKalb County which fixes a bitterly disputed boundary line between adjoining landowners.
The plaintiff-cross-appellant, N.S. Carroll, and his wife, filed suit against the defendant-appellant, Phillip Bukley and his wife, to establish the true boundary line between them. Additionally, Carroll asked that damages be assessed against Bukley for the cutting of some trees and fence posts, and Carroll also sought an injunction against further trespassing by Bukley. Bukley answered, and filed an offer of judgment under Rule 68, A.R.C.P., in which he agreed to accept as the true boundary, a line contained in the legal description used by the plaintiff Carroll in his complaint.
The court, at Carroll's request, appointed E.J. Ladd to survey the disputed boundary. Bukley objected to the line established by Ladd and claimed that Ladd had used the calls in his (Bukley's) deed rather than using the calls in Carroll's deed. Bukley was permitted to hire his own surveyor, who used the calls in Carroll's deed in order to locate the boundary. Needless to say, the location of the boundary by the two different surveys conflicted.
Testimony was taken ore tenus and the trial judge personally viewed the property. The evidence showed that Carroll had once owned the Bukley property and that in 1938, and again in 1945, Carroll employed Ladd to conduct a survey of his land. In 1944, Carroll purchased the adjoining land and Bukley subsequently purchased the Carrolls' first tract.
At one point in time, the two farms in question were a part of a larger place. The present Carroll farm was in the northern *Page 1095 
part or northwestern corner of the larger farm, and the present Bukley farm constituted the rest of the original farm. The Bukley farm roughly bordered the Carroll farm on the southeast and southwest. In 1922, the southeasterly boundary of the present Carroll farm joined the Bukley farm in a straight line extending approximately northeast and southwest. The location of this boundary line lay west of a creek which runs across the Bukley farm. In 1922, the present Bukley farm was owned by one McCurdy, and the present Carroll farm was owned by one Chitwood, but the farm was known in the community as the "Widow Jones" place. These coterminous owners, McCurdy and Chitwood, in 1922, carved out a portion of the Bukley farm and added it to the Carroll farm so that the Carroll farm would reach the creek. A deed was made from McCurdy to Chitwood accordingly. This parcel is referred to in the record of this case as "the water right," even though it was not a mere easement, but was a fee simple conveyance. In describing this "water right" McCurdy and Chitwood measured from the northeast corner of the "Widow Jones farm" (now Carroll's), a common corner between the two farms, easterly to the east bank of the creek. The deed shows this distance to be 198 feet. The court ordered survey by E.J. Ladd in this case found the distance to be 197 feet to a concrete abutment, which Carroll contends the evidence shows is the point on the east bank of the creek which would be one end of the disputed boundary. Carroll also claims that the 1922 measurements of the "water right" show a distance down the creek along the east bank in a southwesterly direction approximately 104.445 feet, and then the description of the "water right" turns northwesterly to a walnut tree on the original line between the two farms. Carroll says that there are inconsequential discrepancies between the measurements in these calls in the 1922 "water rights" deed and the court survey in this case. Carroll claims that the disputed boundary progresses from the east bank of the creek at the concrete abutment around the "water right" tract in a clockwise direction by going down the east bank of the creek back to the original line at the walnut tree. All these features, he claims, are mentioned in the deeds of both parties. From the walnut tree, the disputed boundary goes southwesterly to a point, he says, and thence turns northwesterly some distance and finally bends northward to a point at the middle of the section, with the other end of that part of the boundary being the most seriously disputed.
Carroll bought the present Bukley place in 1938 from a man who stated that he didn't know where the lines were located. Carroll then had E.J. Ladd (the same person appointed by the court to survey the property in this case) to survey the property. Ladd began at the southeast corner of section 17. He progressed around to the Bukley farm (then owned by Carroll) in a counter-clockwise direction. This was done without reference to the "water right" tract, which had been erroneously omitted from the deed. This survey, therefore, showed as a boundary corner the point referred to as the "Widow Jones" corner. This survey caused no dispute among the various landowners who were directly or indirectly affected.
In 1945, Carroll sold the present Bukley property to one John Comer, making an exception of the "water right" tract, but otherwise using the description in the previous deed and using Ladd's 1938 survey, all of which referred to monuments consisting of the walnut tree, the creek, and two stone corners on the foot of Sand Mountain. Carroll then bought the farm which he owns at the present time, consisting of the "water right" tract and the large tract formerly known as the "Widow Jones" farm. To verify the description used in his deed, he had Ladd to survey all around this property. To do this, Ladd ran a tie line from the southeast corner of section 17. Carroll contends that this is a corner verified by joinder with several owners, by reputation in the community, and by using other surveys in addition to Ladd's 1938 survey of the Bukley place. Ladd's survey proceeded along the line of his former survey from the *Page 1096 
southeast corner of section 17 to the "Widow Jones" corner, thence to the walnut tree, and thence along the common boundary to the northernmost stone referred to in the 1938 land survey, which corner Ladd determined to be the middle of section 17. Carroll claims that this midpoint of the section is the beginning point in the description in his present deed, which reads:
 "COMMENCING at the Southwest corner of the Southwest 1/4 of the Northeast 1/4 of Section 17, Township 7 South, Range 8 East, DeKalb County, Alabama. . . ."
Ladd admitted that he had never used the point of beginning called for in the Carroll deed. He testified on cross-examination:
 "Q But, in reality, there never has been a survey, made by you, that starts at the point of beginning called for on Carroll's deed, has there?
"A On this deed here?
"Q Yes sir.
 "A I have never started there, no sir. They ended up there, and is the same difference.
 "Q Well, now, wait a minute. You say it is the same difference to end up there?
 "A Just like going from Chattanooga to Atlanta, you can go from Atlanta to Chattanooga."
Bukley came into the picture when he bought the farm formerly owned by Carroll. Shortly after Bukley purchased his farm, Carroll informed him that something must be done about the fence existing between them. The fence had been built by Carroll's father when Carroll owned the Bukley farm. Carroll told Bukley that the fence had been built too far over on the land Carroll later purchased which is now the Carroll farm. Bukley was of the opinion that it was on the land line and belonged to his farm. The fence being discussed by Carroll and Bukley was the predecessor to the present fence.
About 1953 or 1954, Carroll offered to help build a line fence, but Bukley refused to participate. Carroll testified:
"Q Tell us what was said in that conversation.
 "A I told him that we needed a fence between us, and he said, `Well, I am not able to buy no wire to build no fence.' He said, `I don't have the time to build no fence,' but he said, `You build the fence and I'll help you use it.' I told him then, I said, `I'll build the fence but I am not going to build it on the line, I'll build the fence to where I can move it any time I get ready,' and that's what I did.
"Q All right. What kind of fence did you build?
"A I build a five strand barbwire fence.
"Q With what kind of poles?
"A With cedar posts.
 "Q At the time you built that fence was there still evidence there of the line Mr. Ladd had surveyed twice?
"A There were.
 "Q Where did you place that fence in relation to that line?
 "A Within — I tried to make it ten to twelve feet from the line.
"Q What part of the line are you talking about?
 "A I'm talking about from the line over on me. Put the fence over on me ten to twelve feet from the line."
Carroll built a stock fence on his own land and stated that he believed that the neighboring cattle herds should be kept at least four feet apart. Bukley began to run some cattle on his farm and Carroll testified that some of Bukley's cattle broke through the fence and got with his registered breeding stock. He testified that he had to have two of his registered cows aborted because of this problem. Bukley put some electric wire on the fence posts on his side and Carroll protested. Carroll sought to improve the fence by adding new wire and new posts. Bukley cut off some of the posts and also some trees. This culminated in the present case.
Bukley frames the issue: "Whether the trial court erred in entering the second final decree and granting plaintiffs 4 feet of land *Page 1097 
outside the fence and finding the line to be on the outside margin of said 4 foot strip of land."
Carroll, by cross-appeal, claims that the court erred in not decreeing that the Ladd survey established the true boundary. We affirm in both instances.
On appeal, a judgment establishing a boundary line will be affirmed if, under any reasonable aspect of the case, the decree is supported by credible evidence. The trial court will not be reversed unless there is a clear and decided preponderance of the evidence against its judgment. Ferrell v. Shomo Land Co.,345 So.2d 297 (Ala. 1977).
The issues presented by both appellant and cross-appellant are answered succinctly in Crew v. W.T. Smith Lumber Co., 268 Ala. 628, 109 So.2d 721 (1959), wherein it was said:
 "The appellant insists that the trial court erred in describing the line between the appellant and B. C. Owen; that the course of the line decreed by the court to be the true boundary line between the parties' lands differed from the course described in the pleadings. Such difference does not necessarily mean that the court erred in determining the boundary line. The case of Stansell v. Tharp, 245 Ala. 270, 16 So.2d 857, 859, states that,
 `If [the] complainants do not satisfactorily show that their contention is correct as to the true line, the cause is not due to be dismissed, nor does it necessarily result in finding according to the contention of respondent; but the court will proceed to find the true line, whether it is as either party contends. They may both be wrong in respect to their contentions.'"
There was evidence that Carroll initially put the fence on his property. There was also evidence that neighboring cattle need to be kept at least four feet apart, or they tend to break in and get with other cattle. In short, there was evidence to support the decree of the court establishing the true line, even though the line found by the court is not "as either party contends."
Both Carroll and Bukley question the division of costs. Rule 54 (d) leaves the taxing of costs within the sound discretion of the trial judge. We find no abuse.
The cause is due to be affirmed.
AFFIRMED.
TORBERT, C.J., and JONES, SHORES and BEATTY, JJ., concur.