This is an appeal from a judgment of the Circuit Court of Chilton County resolving boundary disputes between owners of coterminous lands. We affirm.
By warranty deed dated October 30, 1954, Allen Waldrop conveyed to the plaintiffs/appellees, Vester Robinson and Lucille P. Robinson, inter alia, thirty-eight acres of land, more or less, located in the northeast quarter of the southeast quarter of Section 28, Township 23, Range 13. That property was described in the deed as follows:
 The Northeast quarter of the Southeast quarter, less two acres on the South side along the old Randolph Road in Section 28, . . . Township 23, Range 13. . ..
The old Randolph Road referred to in this description is better known as the old Jemison-Randolph Public Road and the trier of fact could have found that it is now no more than an abandoned roadbed which runs approximately one thousand feet along the southern portion of the quarter-quarter. It enters the quarter-quarter on the east forty line approximately one hundred feet north of the southeastern corner of the quarter-quarter, and runs in a southwesterly direction until it intersects with the south forty line.
At the time the appellees purchased the above described property, the land described as "two acres on the South side along the old Randolph Road" was owned by Mr. and Mrs. Herbert Langston. That land was but a part of a larger twelve-acre tract, owned by Langstons, which extended into the southeast quarter of the southeast quarter of Section 28, Township 23, Range 13. The record shows that while the Langstons were in possession of the property south of the old Jemison-Randolph Public Road, the appellees recognized the old road as the northernmost boundary of the Langston property. *Page 959 
On June 8, 1957, the appellees conveyed to the defendants/appellants, Raymond E. Ray and Jeweldine P. Ray,[1]
sister of appellee Lucille P. Robinson, a two-acre tract of land located immediately north of the Langston property on the east forty line. The warranty deed by which this parcel was conveyed contained the following description:
 Beginning at the corner of the Langston property running north along [the] Section line 2 acres deep thence West One acre thence South Two acre [sic] thence East One acre to the point of beginning, containing Two acres in the Northeast fourth of the Southeast fourth Sec. 28, T. 23, R. 13.
The record indicates that the "corner of the Langston property" was physically represented by appellee Vester Robinson to be that point at which the old Jemison-Randolph Public Road intersected the east forty line.
Following this conveyance, appellee Vester Robinson erected a barbed wire fence to mark the northern boundary of the appellants' property. According to the terms of the deed, this fence should have started at a point on the east forty line "two acres" north of the "corner of the Langston property" and run in a westerly direction a distance of "one acre." Instead, Mr. Robinson, in the presence of the appellants, estimated what he believed was "two acres" north of the Langston property; the fence began at a point on the east forty line approximately four hundred feet north of the Jemison-Randolph Public Road. From that point, the fence ran in a westerly direction until it intersected with paved county highway No. 25. Until the present suit was instituted, this fence was always recognized as the northern boundary of the appellants' property.
On November 6, 1959, Mr. and Mrs. Herbert Langston, owners of the twelve-acre tract previously described, conveyed that property to the appellants. The deed by which this property was conveyed contained the following description:
 Two (2) acres of land lying south of the Old Jemison-Randolph Public Road (which road is no longer in use), in the Northeast Fourth of the Southeast Fourth of Section 28, Township 23, Range 13; Also, all that part of the Southeast Fourth of the Southeast Fourth of Section 28, Township 23, Range 13 that lies north of the paved Jemison-Randolph Public Road running in a general east and west direction across said forty and containing ten (10) acres, more or less. All of the above described property containing twelve (12) acres, more or less.
With the execution of this deed, the appellants became the owners of a second tract lying in the northeast quarter of the southeast quarter of Section 28, Township 23, Range 13, this tract being composed entirely of lands lying south of the old Jemison-Randolph Public Road, and believed to contain two acres.
Approximately seven or eight years after the Langston deed was executed, appellee Vester Robinson hired a Mr. Carl Maddox for the purpose of digging a cattle watering hole along the abandoned roadbed. This water hole was dug with a backhoe and, according to a survey subsequently made on the property, lies partially on and partially south of the old roadbed, approximately seven hundred feet west of the east forty line. The testimony elicited at trial indicates that from the time this water hole was created until the present, the appellees have made exclusive use of it to water their cattle.
In May of 1966, the appellees sought to borrow money from the Federal Land Bank. In considering the appellees' loan application, the federal bank conducted a thorough title search to determine whether the appellees held clear title. After this title search, Mr. Morgan Reynolds, an employee of the Federal Land Bank, informed the appellees that an error had been discovered in the 1957 deed wherein appellees had conveyed two acres of land to the appellants. *Page 960 
Mr. Reynolds instructed them that they were required by law to correct that deed; therefore, on May 20, 1966, the appellees filed a corrective deed amending the description contained in the 1957 deed to read as follows:
 Beginning at the southeast corner of the Northeast Quarter of the Southeast Quarter, Section 28, Township 23, Range 13, and run thence north on and along the east line of said forty 420 feet, thence run west 210 feet, thence run south 420 feet, thence run east 210 feet, to the point of beginning.
This corrective deed is significant because it changes the designated "starting point" in the description of the property from the "corner of the Langston property" to the southeast corner of Section 28, Township 23, Range 13. As noted previously, the "corner of the Langston property" was recognized by the parties as that point at which the old Jemison-Randolph Public Road intersected the east forty line, a point one hundred feet north of the southeast corner of the quarter-quarter. As a result, the corrective deed described the property as lying south of the location that the parties originally agreed to. The appellants were never informed that this deed was being filed, nor were they apprised of its existence until after the present lawsuit was commenced.
It was not until the spring of 1978 that the events leading to the present suit transpired. In March or April of that year, the appellees hired a Mr. Bobby Seale, an unlicensed surveyor, to survey the land they conveyed to the appellants. In doing so, Mr. Seale discovered that there was, in fact, more than two acres (i.e., 3. 19 acres) lying south of the old Jemison-Randolph Public Road and advised the appellees that they might own part of it. As a result, a dispute arose between the parties as to whether the old Jemison-Randolph Public Road was, in fact, the boundary between their respective properties. The appellees contended that they owned all the land lying south of the roadbed, less and except two acres specifically granted to the appellants. The appellants, on the other hand, claimed that the appellees had no claim to any of the property lying south of the old road. When the parties were unable to reach an amicable settlement, the present lawsuit was initiated.
On November 2, 1978, the appellees filed a petition in the Circuit Court of Chilton County alleging that the 1959 Langston deed was unclear and uncertain in its description of the property which was conveyed to the appellants. More specifically, appellees averred that this description caused confusion as to what portion of the land lying south of the old road belonged to the appellants and what portion belonged to the appellees. The appellees prayed that the court would enter an order clarifying the description of that conveyance and would ascertain a common boundary line and division between the properties. In addition, they requested the trial court to enter an order establishing that the appellants owned only two acres of land lying south of the old Jemison-Randolph Public Road and that the balance of the land lying south of the road belonged to the appellees.
In response to this petition, the appellants filed an answer denying that the Langston deed was ambiguous and denying that they owned only two acres of land lying south of the old road. To the contrary, they argued that the old Jemison-Randolph Public Road had been recognized as the permanent boundary between their properties for over twenty years. Beyond this, the appellants averred that they had been in open, notorious, exclusive, adverse, peaceful and hostile possession of all
lands lying south of the old road since November 6, 1959, and that their predecessors in title had been in hostile possession of the land for more than forty years.
In addition to this answer, the appellants filed a counterclaim raising various contentions concerning the filing of the 1966 corrective deed and the boundaries of the appellees' property north of the old Jemison-Randolph Public Road. With regard to the corrective deed, the appellants averred that the deed had been filed without their *Page 961 
knowledge, notice, approval or consent, and was not discovered by them until November 6, 1978, some four days after the commencement of this suit. They contended that the corrective deed constituted a cloud upon the title to their lands and was a malicious attempt by the appellees to retake a portion of the property they previously conveyed. The appellants requested $25,000 in punitive damages to punish appellees for this conduct.
As concerns the boundaries of the appellants' property north of the old road, the appellants contended that the fence erected by appellee Vester Robinson was located less than "two acres" north of the Langston property and, therefore, was not in conformity with the description contained in the 1957 deed. They contended that this action by the appellees had the effect of taking from the appellants a strip of land several feet in depth across the north side of their property. As a result, the appellants requested the trial court to enter an order requiring the appellees to relocate the fence after an accurate survey was made.
On the basis of these pleadings, the case proceeded to trial with the trial court hearing evidence ore tenus. After lengthy testimony was received the trial court rendered its final decree on November 7, 1979. The substance of that decree can be summarized as follows:
1. The trial court found that the appellees were not guilty of any malice, fraud, or intent to cloud the title to appellants' land when they executed the 1966 corrective deed. As a result, the trial court specifically denied the appellants' request for punitive damages. In addition, the trial court found that all the parties admitted that the corrective deed was in error; therefore, the court ordered, adjudged and decreed that the deed was null and void.
2. With regard to the appellees' specific prayers for relief, the trial court found that they did not own any right, claim, title or interest in and to any portion of the northeast quarter of the southeast quarter of Section 28, Township 23, Range 13, lying south of the south margin of the old Jemison-Randolph Public Road; however, the trial court found that the appellees had acquired title to those lands south of the road surrounding the water hole by virtue of adverse possession. The exact land in which the appellees had acquired
title was described by the trial court as follows:
 Begin at a point where the South line of the NE 1/4 of the SE 1/4 of Section 28, Township 23-North, Range 13-East, Chilton County, Alabama intersects the southerly margin of the old abandoned Jemison-Randolph public road and run thence Northeasterly along the meanderings of the South margin of said road to a point which is more or less northeasterly of the water hole dug by Plaintiff; said point being the point of intersection of the South margin of said road and a fence crossing said road from the north margin thereof; and from said point run thence Southerly along a line perpendicular to the South margin of said roadbed for a distance of 10 feet; thence run Southwesterly along the meanderings and parallel to the south line of said abandoned roadbed to a point where said line intersects the south quarter-quarter line; from said point run thence Westerly along the quarter-quarter line a distance of 10 feet, more or less, to the point of beginning. It being the intention of this description to describe a strip of land along the south of said old abandoned roadbed of uniform width and ten feet wide in which the Plaintiffs' watering hole is presently located.
The trial court further decreed that the appellants owned all that land lying south of the south margin of the abandoned road, less and except that strip of land described above. All lands north of the south margin of the old abandoned road were decreed to be the property of the appellees, less and except the two-acre parcel they conveyed to the appellants in 1957. In this way the trial court specifically established the south margin of the old Jemison-Randolph Public Road and the specified line around the water hole as a permanent northern boundary of the appellants' property lying south of the old road. *Page 962 
3. As concerns the appellants' request that the trial court order the appellees to relocate their barbed wire fence, the trial court found that the appellants had accepted and acquiesced in the erection of that fence and had always recognized it as marking the northern boundary of their property. As a result, the trial court decreed that the barbed wire fence was, in fact, the northern boundary of the appellants' property lying north of the old Jemison-Randolph Public Road. Moreover, the court clarified the description of that property to read as follows:
 Beginning at the SE corner of the NE 1/4 of the SE 1/4 of Section 28, Township 23, Range 13, and run North along the East line of said quarter-quarter a distance of 100 feet, more or less, to a point on the North boundary of the old abandoned Jemison-Randolph public road and the point of beginning of the parcel of land herein described. From the point of beginning continue to run North along said quarter-quarter line for a distance of 400 feet, more or less, and to an iron pin and to a barb wire fence where said fence runs in a westerly direction; thence run westerly along said barb wire fence a distance of 210 feet more or less to a point; from said point run thence South and parallel with the East quarter-quarter line a distance of 400 feet, more or less, said line crossing Chilton County public road No. 25 passing through the barn of Raymond E. Ray and Jeweldean P. Ray and said line intersecting the North line of the old abandoned Jemison-Randolph public road. From said point of intersection, run thence Easterly along the meanderings of the North line of said old abandoned road to the point of beginning.
On December 5, 1979, the appellants filed a motion for new trial alleging that the trial court's decree was contrary to the pleadings, law and evidence. When that motion was denied, the appellants pursued this appeal.
On appeal, the appellants raise substantially the same issues as they raised in their motion for new trial. They contend that the lower court decree is in error as being contrary to the pleadings and evidence adduced at trial. Additionally, they argue that the decree is not reasonably certain in establishing the location of boundary lines and is not definite enough to stand alone without the aid of extrinsic evidence. As to both of these contentions, we disagree.
In actions involving boundary disputes between owners of coterminous lands, it is improper to refer to any "burden of proof" in establishing a true boundary line. It is the responsibility of the trial court, not the parties, to establish the true location of the line. Edwards v. Farmer,285 Ala. 118, 229 So.2d 507 (1969); Keith v. Milford, 270 Ala. 376,119 So.2d 184 (1960). In doing so, the trial court must undertake an independent and thorough examination of all the evidence offered at trial. Both parties will necessarily proffer evidence on that ultimate issue; however, neither party carries the burden of proving the true location of the line by a preponderance of the evidence.
As noted by this Court in Stansell v. Tharp, 245 Ala. 270,16 So.2d 857 (1944):
 The burden is not on either party as to the true location of the line in the sense that if the evidence is equally balanced he loses the controversy. While the bill sets out complainants' contention as to the location of the true line, the primary burden which complainants carry is to sustain the allegations showing the controversy, and that a situation exists which invokes the equity power of the court to find and fix the location of the line in dispute. . . . If complainants do not satisfactorily show that their contention is correct as to the true line, the cause is not due to be dismissed, nor does it necessarily result in finding according to the contention of respondent; but the court will proceed to find the true line, whether it is as either party contends. They may both be wrong in respect to their contentions. See, Ford v. Beam, 241 Ala. 340, 2 So.2d 411; Edwards v. Smith, 240 Ala. 397, 199 So. 811; Baldwin v. Harrelson, 225 Ala. 386, 143 So. 558. *Page 963 
See also Bryan v. W.T. Smith Lumber Co., 278 Ala. 538,179 So.2d 287 (1965). If, on the basis of the pleadings and evidence presented at trial, a trial court is convinced that a controversy exists concerning the location of a boundary line, it is empowered to evaluate the evidence and reach a conclusive determination on the true location of the line; however, in doing so, it shall not be constrained by the pleadings to establish only a boundary line that is requested by either party. To the contrary, the court must proceed to find the true line, whether it is as either party contends. Stansell v.Tharp, supra; Deese v. Odom, 283 Ala. 420, 219 So.2d 134
(1969).
In the present case, it is clear from the pleadings and evidence that a genuine controversy existed as to several boundaries of the appellants' lands lying in the northeast quarter of the southeast quarter of Section 28, Township 23, Range 13. As a result, it became the responsibility of the trial court to establish the true location of those boundaries. The appellants contend that the decree establishing the boundaries was unresponsive to the pleadings in that it established lines which were not requested by the parties. Furthermore, they argue that the trial court's location of the lines is contrary to and unsupported by the evidence. These arguments are untenable.
After examining the evidence, the trial court held that the south margin of the old Jemison-Randolph Public Road marked the northern boundary of the appellants' property lying south of the road. In granting the appellees a portion of the land lying south of the road, the trial court determined that, although the appellees did not own any property lying south of the old road, they had acquired rights in and to the area surrounding the cattle watering hole by virtue of adverse possession. This finding of adverse possession was based upon testimony elicited at trial that the appellees had cleared the area around the water hole, dredged the water hole and exclusively used the water hole for watering their cattle for over fourteen years, a time period well in excess of the ten-year prescriptive period applicable to boundary dispute cases. Carpenter v. Huffman,294 Ala. 189, 314 So.2d 65 (1975); Lay v. Phillips, 276 Ala. 273,161 So.2d 477 (1964). Other contradictory testimony was heard on this issue which the trial court, hearing evidence oretenus, resolved in favor of a finding of adverse possession.
As far as the appellants' property north of the old road is concerned, the court recognized a barbed wire fence as the northern boundary of the property. This decision was based upon evidence that the parties had recognized that fence as the boundary between their properties for over twenty years. Beyond this, the trial court defined the boundaries of that property according to the terms contained in the deed by which it was conveyed.
In reviewing the judgment of the trial court in cases such as these, this Court shall not enter a reversal unless the judgment of the trial court is palpably erroneous or manifestly unjust. Jemison v. Belcher, 368 So.2d 849 (Ala. 1979); Smith v.Nelson, 355 So.2d 359 (Ala. 1978). Stated otherwise, the judgment of the trial court must be affirmed if, under any reasonable aspect of the case, its decree is supported by credible evidence. Kirby v. Jones, 370 So.2d 250 (Ala. 1979);Buckley v. Carroll, 366 So.2d 1094 (Ala. 1978). We find no such palpable error and, therefore, hold that the trial court did not commit error in establishing the true boundaries of the properties.
A second argument raised by the appellants attacks the trial court's decree as being unclear and uncertain in its description of the northern boundary of the appellants' property lying south of the old road. They argue that the words of the decree attempting to establish and locate that boundary line are vague in that they do not refer to any plat of lands nor adopt any plat by reference.
It is clear that decrees establishing boundaries between coterminous lands must be reasonably definite and certain in their descriptions. Ascertained boundary lines must be capable of being physically identified by an officer of the court, and *Page 964 
their description must not leave room for the exercise of discretion in their location. In Limbaugh v. Comer, 265 Ala. 202, 90 So.2d 246 (1956); this Court held:
 A decree establishing the location of a boundary line between the lands of coterminous owners must be reasonably certain within itself or by reference to the pleadings, evidence or documents filed in the cause, and the decree must be so certain that the line may be located and marked by an officer of the court who may be appointed to so mark the line without reference to extrinsic evidence or the use of his own discretion or by drawing his own conclusions as to any fact determinant of the true location of the line.
 Where a decree refers to a survey without more in undertaking to describe a boundary line, the decree is not sufficiently certain, but where permanent monuments, natural or artificial, are already on the ground and are shown in evidence and incorporated in the decree they will suffice to fix the boundary.
(Emphasis added.)
The northern boundary of the appellants' property lying south of the old road was described by the trial court as being the south margin of the old Jemison-Randolph Public Road. That line is clearly definite and ascertainable. As far as the area around the water hole is concerned, the trial court's decree (previously quoted), set forth an explicit metes and bounds description of the property in which the appellees had acquired rights, and, in doing so, specifically referred to physical monuments presently located on the property. That description left no room for discretion in locating the boundary line between the appellants' and appellees' property. We find no uncertainty in the trial court's establishment of the true boundary lines, and, therefore, conclude that the judgment of the trial court is due to be affirmed.
AFFIRMED.
TORBERT, C.J., and JONES, SHORES and BEATTY, JJ., concur.
[1] While in this Court the case is styled under the names Raymond E. Ray and Jewel P. Ray, the record on appeal sometimes shows Mrs. Ray's name as "Jeweldine" or "Jeweldean."