Alabama Great Southern Railroad Company ("Railroad") filed this action in ejectment against R.B. Brown for recovery of possession of a railroad right-of-way between the Railroad's milepost 32 and milepost 38, located in DeKalb County, Alabama. Brown denied the allegations of the Railroad's complaint and claimed to be the fee simple owner of the real estate between mile 32 and mile 37 1/2. In a counterclaim, Brown sought damages for, among other things, the Railroad's alleged destruction of his real and personal property.
The Railroad moved for summary judgment. The trial court granted a partial summary judgment as to the location and the width of the Railroad's right-of-way. The issues of whether Brown acquired title to the portion of the right-of-way in question by adverse use and of whether Brown was entitled to damages for destruction of his property were submitted to the jury. The jury found that Brown had acquired no portion of the right-of-way by adverse use but awarded him damages of $7,500 for destruction of his property by the Railroad. Brown's posttrial motions were denied, and he appealed. We affirm.
Brown states the issues as: Did the trial court err in ruling that the evidence showed, without dispute, that the Railroad owned a right-of-way extending 50 feet on each side from the centerline of its track between mile 32 and mile 37 1/2? Did the trial court err in refusing to set aside the jury finding that Brown did not adversely possess any portion of the Railroad's right-of-way? Did the trial court err to reversal in giving its oral charge regarding exclusive possession for proving adverse possession? Did the trial court err to reversal in failing to charge on trespass to realty?
Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Rule 56, A.R.Civ.P. All reasonable doubts concerning the existence of a genuine issue of fact must be resolved against the moving party. This action was pending prior to June 11, 1987; therefore, Alabama Code 1975, §12-21-12, does not apply and the applicable standard of review is the "scintilla rule." Kizziah v. Golden Rule Ins. Co.,536 So.2d 943 (Ala. 1988).
The subject of this action is a five and one-half mile stretch of track located in DeKalb County, which is part of the Railroad's main line running from Birmingham to Chattanooga, Tennessee.
Brown is the owner of the property that joins the Railroad's right-of-way for that 5 1/2 miles, extending between the 32-mile mark and the 38-mile mark. He acquired title to that adjoining property through inheritance and by deed.
The Railroad and its predecessor in interest, Wills Railroad Company, have operated and maintained the railroad line through DeKalb County since 1859, when Wills Railroad Company began acquiring the 50-foot right-of-way by a series of deeds, for the safe and efficient operation of the railroad and for maintenance of the track. Although most of the deeds presented by the Railroad did not indicate the width of the right-of-way or did not contain a description of the property over which the right-of-way was granted, several of the deeds in Brown's chain of title *Page 928 
made reference to the Railroad's right-of-way in describing the property conveyed to him. In any event, in Alabama Midland Ry.v. Brown, 98 Ala. 647, 13 So. 70 (1893), we recognized that a grant of a railroad right-of-way of a non-specified width should be construed as "not exceeding 100 feet," as that was the width that a railroad company could acquire through condemnation. See also Ala. Code 1975, § 10-5-2. In addition, valuation maps of railroad properties, prepared as early as 1914 pursuant to Interstate Commerce Commission requirements, evinced a 50-foot right-of-way on each side of the centerline of the track through the property in question.
In 1927, Brown's grandfather filed an ejectment suit against the Railroad, contending, like Brown, that the Railroad was unlawfully located on his property. In Alabama Great SouthernR. R. v. Brown, 215 Ala. 533, 112 So. 131 (1927), the Court recognized the right-of-way in question as a strip of land not over 100 feet wide and extending 50 feet on each side of the center of the Railroad's main track of railroad.
As a result of that suit, the Railroad filed a suit in equity, seeking an adjudication that the Railroad owned an easement of 50 feet on each side of the center line of the track. The circuit court granted the relief sought by the Railroad and enjoined Brown's grandfather from further prosecuting his ejectment suit and from interfering with the Railroad's use and possession of the easement. In Brown v.Alabama Great Southern R. R., 219 Ala. 87, 121 So. 91 (1929), we affirmed the holding of the circuit court:
 "It appears that since the year 1907, when the property here in controversy was by [the Railroad] enclosed by a fence, the [Railroad] has been continuously and exclusively in possession, maintaining and improving the same for railroad purposes, such as the extension of the 'passing track,' which seems to have been located on the property prior to 1907, this extension being done, evidently at considerable expense, in 1912 or 1913, ditching and grading the land, maintaining telephone and telegraph wires, automatic block signals, battery boxed towers with concrete foundation thereon. While some of these improvements may have been further improved or replaced subsequent to [Brown's grandfather's] purchase, yet we agree with the court below that decidedly the greater portion thereof was placed on the land several years before, and we are further persuaded [that Brown's grandfather] purchased with a knowledge of the situation as to the continuous and exclusive possession of [the Railroad] as to this property."
219 Ala. at 88-89, 121 So. at 92-93. In addition, the record reveals that in 1907, when the Railroad Commission ordered the Railroad to erect fencing from milepost 31.5 to milepost 75, the Railroad Commission and the property owners recognized the Railroad's right-of-way.
The testimony of Railroad employees further evinced the Railroad's use and possession of the claimed 50-foot right-of-way on each side of the centerline of the track. They testified that the right-of-way was used for drainage purposes, as a work area by the timber and surfacing crew when repairing track, for installing and removing crossties, for laying rail, and for ditching and storing debris removed from the roadbed so that it would not wash back on the tracks. In addition, they testified that they never saw any encroachment by Brown until 1980, when he built a fence within 50 feet of the track, and that he later constructed an electric fence as close as 18 feet from the centerline of the track. Further testimony revealed that the Railroad maintained weed and bush control along the track by using spray and mowers for a minimum of 25 feet on each side of the track and for up to 50 feet near curves and crossings. The evidence also showed that telegraph poles had been located within the claimed right-of-way until 1980, when the Railroad removed them because communication lines had been placed underground.
Brown testified that he had lived within one-half mile of the track all of his life; that he remembered that there was fencing along the track, or at least remnants of *Page 929 
that fencing, visible in his lifetime; that the only change to the railroad right-of-way of which he was aware occurred in 1937 when the Railroad bought a strip of land for construction of a ditch (the deed for that transaction made reference to the Railroad's 50-foot right-of-way); that, over the years, he had patched portions of the old fence to serve as a pasture fence for his livestock; that, about 20 years ago, he first built a fence located between the remnants of the old fence and the track; that he nailed fence wire to the Railroad's telegraph poles before they were removed; and that in 1980 he built a new fence (for a distance of two miles) between the track and a ditch dug by the Railroad. He also testified that he had erected an electric fence along a portion of property between the track and a ditch (an area that he acknowledged the Railroad had claimed all of his life), and that for 30 years his livestock had grazed the area that the Railroad claimed.
Brown testified that in the 1950's and 1960's he had written letters to the Railroad, complaining of the disrepair of the fences. However, he presented no evidence to corroborate that testimony. There was evidence, however, that in 1980, when the Railroad requested that he remove certain fencing, Brown wrote the Railroad: "My records indicate that you do not own a right-of-way where the railroad is located. Please move this railroad and discontinue the unauthorized use of my property."
Judge Randall Cole entered the following order:
 "It is the judgment of the court that the evidence raises no genuine issue of material fact regarding the right-of-way as claimed by the Railroad. It is uncontroverted that the Railroad has claimed a right-of-way of 50 feet on each side of the centerline of the track through Brown's property since 1914, when the valuation maps were drawn, and that such right-of-way has been used by the Railroad since that time in ways incident to the operation of the railroad. The evidence is that the Railroad's use and possession of the right-of-way over the years has been continuous, exclusive, and hostile, with the exception of the evidence that Brown built a fence on the claimed right-of-way about 20 years ago, that he has built fences and asserted a hostile claim since 1980, and that his livestock have grazed the area for 30 years.
 "The Railroad had no notice of a hostile claim by Brown until 1980, and the acts of possession relied upon by Brown prior to 1980 are insufficient to defeat the Railroad's claim. The Alabama Supreme Court has stated the applicable law as follows:
 " 'The rule is declared that the continued use of the unoccupied portion of a railroad right-of-way by the owner of the fee, or by a third person placing structures thereon, is presumed to be in recognition of the superior easement of the railway company, merely permissive, and such possession does not become adverse until notice is brought home to the railway company of a hostile claim. The statute of limitations does not begin to run until such notice appears. . . .
". . . .
 " 'A railroad right-of-way is declared more than mere easement. The important public use to which it is devoted requires that dominion extend to the limits of the right-of-way granted by law. The protection of tracks from falling timber, maintenance of cuts, fills and drains, removal of combustible material to prevent spread of fires, are among the incidents of such right-of-way. Ejectment may therefore be maintained, even against the owner of the fee for the entire right-of-way, without showing any present need for actual occupancy. We may add that the long existent authority of the railroad commission to require the fencing of right-of-ways is a legislative recognition of the right to full possession.'
 "Central of Ga. Ry. v. Faulkner, 217 Ala. 82, 114 So. 686 (1927).
 "The Railroad's claim is further established by the litigation concluded in *Page 930 1929 between the Railroad and A.J. Brown to the extent that the property here in controversy was the subject of that litigation.
 "Accordingly, IT IS ADJUDGED AND DECREED that partial summary judgment is rendered in favor of the Railroad, the court finding that the Railroad has acquired by adverse possession and by prior litigation a right-of-way of 50 feet on each side of the centerline of its track running across the lands of R.B. Brown." (Emphasis added.)
We agree. As the trial court held, Brown's testimony did "not contravene the evidence presented by the Railroad or any material point regarding the right-of-way issue."
The trial court submitted to the jury the issue of whether Brown had acquired any portion of the Railroad's right-of-way by adverse possession, and the jury decided against Brown on this issue. The trial court found that the jury could have properly determined, as it did, that Brown had not acquired any portion of the Railroad's right-of-way by adverse possession and denied Brown's motion for a judgment notwithstanding the verdict or, in the alternative, for a new trial.
 "A motion for JNOV should be denied if there is any conflict in the evidence for the jury to resolve, and the existence of such a conflict is to be determined by the scintilla rule."
Gary v. Kirkland, 514 So.2d 970, 971 (Ala. 1987) (arising prior to the 1987 adoption of the "substantial evidence" rule, §12-21-12).
 "It is well established that a ruling on a motion for a new trial rests within the sound discretion of the trial judge. The exercise of that discretion carries with it a presumption of correctness, which will not be disturbed by this Court unless some legal right is abused and the record plainly and palpably shows the trial judge to be in error. Hill v. Cherry, 379 So.2d 590 (Ala. 1980)."
Hill v. Sherwood, 488 So.2d 1357, 1359 (Ala. 1986).
The trial court charged the jury that, in order for Brown to prevail on the issue of adverse possession, he had the burden of reasonably satisfying the jury, by clear and convincing evidence, that he had been in possession of the right-of-way property in question for a period of at least 10 years, and that such possession had been open, notorious, hostile, continuous, and exclusive. See Robinson v. Hamilton,496 So.2d 8 (Ala. 1986).
The continued use of the unoccupied portion of a railroad right-of-way by the fee simple owner of the land, or by any third person, is presumed to be in recognition of the railroad's right-of-way. When a landowner uses unoccupied portions of that right-of-way, that use is presumed to be permissive rather than hostile, and that possession or that use does not become adverse until notice is brought home to the railroad that the landowner is asserting a hostile claim. That use would count toward the necessary ten-year period only from the time that the railroad actually knew of the hostile claim. See Central of Georgia Ry. v. Faulkner, 217 Ala. 82,114 So. 686 (1927). Testimony revealed that the first notice of a hostile claim by Brown did not come until 1980 and, without that notice, Brown's use of the right-of-way was to be taken as permissive rather than hostile.
For the foregoing reasons, we hold that the trial court did not err in denying Brown's motion for a judgment notwithstanding the verdict, or, in the alternative, for a new trial.
Brown argues that the trial court's charge regarding exclusive possession as an essential element of adverse possession was confusing and ambiguous. We disagree. The trial court charged:
 "[T]he fourth characteristic is that it be exclusive; there must be exclusive possession in order to establish adverse possession. Ordinarily, where two parties are in possession of the same piece of property, then neither has exclusive possession of it. To establish this element of adverse possession, Mr. Brown must reasonably satisfy you that he used the property in question to the exclusion of the railroad and to the exclusion of others." *Page 931 
See Robinson v. Hamilton, supra; Jemison v. Belcher,368 So.2d 849 (Ala. 1979).
We note Brown's argument, in his brief, that "an adverse claimant could acquire title to property while allowing others to simultaneously use the premises since exclusivity of possession would not be threatened by mere casual use or even prescriptive easements." See 28 Ala.L.Rev., 447, 467 (1976). This is not applicable in this case. The Railroad owns a right-of-way, an easement. This was acquired by deeds and adverse possession and was established by judicial decree. For Brown, who owns property adjacent to the Railroad's easement, to divest the Railroad of any portion of its easement, his possession must be exclusive as to the Railroad.
In Carpenter v. Huffman, 294 Ala. 189, 314 So.2d 65 (1975), Justice Jones summarized the applicability of our adverse possession statute, now Ala. Code 1975, § 6-5-200, as it relates to coterminous landowners:
 "The three alternative prerequisites 1) deed or other color of title, 2) annual listing of land for taxation, or 3) title by descent cast or devise from a predecessor, therefore, are not necessary to sustain a claim to title by a coterminous owner. Lay v. Phillips, 276 Ala. 273, 161 So.2d 477 (1964); Sylvest v. Stowers, 276 Ala. 695, 166 So.2d 423 (1964). That is to say, although the claimant is relieved of these three alternative conditions prescribed by [§ 6-5-200], he may still acquire title by the exercise of adverse possession for a period of ten years. Cambron v. Kirkland, 287 Ala. 531, 253 So.2d 180 (1971); Lay v. Phillips, supra; McNeil v. Hadden, 261 Ala. 691, 76 So.2d 160 (1954). However, the requirements that possession be open, notorious, hostile, continuous and exclusive are still applicable. Thompson v. Odom, 279 Ala. 211, 184 So.2d 120 (1966)." (Emphasis added.)
Quoted with approval in Mardis v. Nichols, 393 So.2d 976, 977
(Ala. 1981), and in Robinson v. Hamilton, supra, at 10. Exclusivity, as a necessary element of adverse possession, is generally demonstrated by acts that comport with ownership.Goodson v. Brothers, 111 Ala. 589, 20 So. 443 (1896).
We hold that the trial court correctly charged the jury on exclusivity as a necessary element of adverse possession.
Brown's final contention is that the trial court erred to reversal in failing to charge the jury that the proper measure of damages for a trespass to real property, when timber has been damaged or destroyed, is the difference between the value of the land immediately before the trespass and its value immediately after. See Borland v. Sanders Lead Co.,369 So.2d 523 (Ala. 1979). After carefully reviewing the record, however, we can find no evidentiary basis upon which to reverse. The only evidence that tends to show any actual damage done to Brown's land as a result of the loss of timber was Brown's testimony that the value of the timber damaged or destroyed was $100. There was no evidence of the value of the land before or after the trespass. Therefore, even if the trial court had given the requested charge, there would have been no evidence upon which the jury could have based a compensatory award for such trespass in excess of $100 for the injury done to Brown's land as a consequence of the Railroad's damaging or destroying his timber.
AFFIRMED.
HORNSBY, C.J., and JONES, SHORES, ADAMS and KENNEDY, JJ., concur.