304 So.2d 175

Richard PRESTWOOD

v.

Truman GILBREATH.

SC 693.

Supreme Court of Alabama.

Nov. 27, 1974.

Loma B. Beaty, Fort Payne, for appellant.

Beck & Beck, Fort Payne, for appellee.

BLOODWORTH, Justice.

Appellant Prestwood (respondent below) has appealed from a final decree determining the disputed boundary line between his property and that of appellee Gilbreath (complainant below). After a careful review of the evidence, we affirm.

The suit was commenced by Richard Prestwood on March 15, 1962, as an action in the nature of ejectment against Truman Gilbreath. On motion of Gilbreath, the proceedings were transferred to equity and, on March 6, 1963, Gilbreath filed a bill of complaint against Prestwood to establish the true boundary line between their respective properties. All the evidence was taken by deposition. The cause was not submitted to the trial court until May, 1973. It was submitted in this Court October 16, 1974, after oral argument.

The controversy arises out of the vague and inconsistent descriptions contained in the deeds of the parties. The deed of appellee Gilbreath (complainant below) conveys, inter alia:

"The West half of the Northwest Quarter of Section Fourteen (14), Township Six (6), Range Nine (9) East, and Thirty Seven (37) acres, more or less, of the Northeast quarter of the Northwest quarter of Section Fourteen (14), Township Six (6), Range Nine (9) East, and about Three (3) acres, more or less, of the Southwest Quarter of the Southwest Quarter of Section Eleven (11), Township Six (6), Range Nine (9) East, the North boundary line of the lands herein conveyed being that certain fence erected by T. H. Carroll and Frank Allen and as it now stands on said land; . . . ."

The deed of appellant Prestwood (respondent below) conveys, inter alia:

"The W½ of the SE¼; the E½ of the SW¼; the SW ¼ of the SW¼, except a small part of Wills Creek, and 20 acres of the NW¼ of the SW¼ bounded on the West by Wills Creek, all in Section 11 Township 6 South of Range 9 East. Also 23 acres of the NE¼ of the NW¼ and the NW¼ of the NW¼ of Section 14, Township 6 South of Range 9 East and bounded on the South by lands of Taylor Carroll, the fence being the line, . . . ."

Thus, Gilbreath's deed calls for three acres in Prestwood's southwest forty in Section 11, and Prestwood's deed calls for 23 acres in Gilbreath's two forties in Section 14. Both deeds say the Carroll-Allen fence is the boundary line.

The following sketch may be of aid to the reader in understanding the issues on this appeal.

In his bill of complaint, appellee Gilbreath alleges a dispute exists between the parties as to the location of the old Carroll-Allen fence and seeks the court's determination as to its location. By an amendment, Gilbreath alleges the true boundary line to be a certain fence erected by his father in 1951, to which line he and his father have claimed by adverse possession for more than ten years.

The cause was submitted to the trial judge upon the depositions of numerous witnesses, exhibits, the report of a court-appointed surveyor and the parties' muniments of title.

■ The first issue decided by the trial court was Gilbreath's claim of adverse possession to the fence erected by his father. Gilbreath bases this claim on the maintenance of the fence built by his father along the line he believed to be the boundary. This fence was apparently commenced in early 1951 and was completed in the spring of 1951. Prestwood's original complaint in ejectment against Gilbreath was not filed until March 15, 1962, more than ten years later.

The trial judge held, inter alia:

"* * * Taking all of the testimony into consideration, that offered by the complainant and that offered by the Respondent, this court is of the opinion that, at most, a scrambled or intermittent possession is shown and that the court must look to the respective muniments of titles to determine where the boundary line between the lands of complainant and respondent should be established."

In this finding we think the trial court erred.

The second issue considered by the trial court was the true location of the original fence between the Allen lands (now owned by Prestwood) and the Carroll lands (now owned by Gilbreath).

The evidence offered by Gilbreath tended to show that the Carroll-Allen fence was a wooden, rail fence which ran along the line of a fence erected by Gilbreath's father in 1951. However, the rail fence was completely destroyed by fire many years ago and no trace of it can be found.

On the other hand, the evidence presented by Prestwood tended to show that the old fence was a "page" wire fence located considerably south of the fence erected by Gilbreath's father and running in a more northwesterly, southeasterly direction. Vestiges of an old fence were found in this general area and its bearing and distance plotted by the court-appointed surveyor.

In rebuttal, Gilbreath presented evidence that the "page" wire fence was erected by the "Hesters boys" (tenants of Gilbreath's predecessor) as a stock fence and was neither intended as a line fence nor erected on the line of the old Carrol-Allen fence.

The trial court found that the Carroll-Allen fence could not be located with any degree of certainty and, therefore, determined that the boundary line should be fixed in accordance with the acreage descriptions in the deeds.

From examining the chain of title of both parties, the trial court concluded that the record titles of the parties came from a common source, one Z. T. Allman, who until 1880 owned both the Prestwood and Gilbreath tracts. In 1880 Allman conveyed the following described parcel to Gilbreath's predecessor:

"W½ NW¼ Sec. 14, T. 6, R. 9, *and 37 acres more or less of the NE¼ of NW¼ of Sec. 14, T. 6, R. 9, and about three acres more or less of the SW¼ SW¼ Sec. 11, T. 6, R. 9,* this north boundary line being situated as indicated by the fence as it now stands on the land." (Emphasis supplied.)

In 1887 Allman conveyed to Prestwood's predecessor the adjoining parcel, the description of which included the following:

". . . *also the SW¼ of the SW¼ of Section 11, Township 6, Range 9, except*

*a small portion west of Wills Creek, . . . and also twenty three acres, more or less, of the NE¼ and the NW¼ of the NW¼ of Section 14, Township 6, Range 9, being bounded on the south by lands of Taylor Carroll the fence now being on said line . . . ."* (Emphasis supplied.)

These same descriptions continued in the parties' chain of title and appear virtually unchanged in the present deeds.

Each of the quarter-quarter sections involved is practically a full forty. Thus, without the existence, in fact, of the established Carroll-Allen fence, the 1887 deed purports to convey to Prestwood's predecessor in title part of the same lands already conveyed to Gilbreath's predecessor in title. The trial judge held that Gilbreath had the older and thus superior title and was therefore entitled to have the line fixed in accordance with the acreage description in his deed. Consequently, the boundary was fixed as a diagonal line running across the NE¼ of the NW¼ of Sec. 14, intersecting the NW corner of that quarter-quarter section and continuing across the SW¼ of SW¼ of Sec. 11 to the north south section line, so that the line carves out a three-acre parcel north of said line in the NE¼ of the NW¼ of Sec. 14 and a three-acre parcel south of said line in the SW¼ of the SW¼ of Sec. 11.

By coincidence this line followed almost exactly the line of the fence erected in 1951 by Gilbreath's father. However, the Gilbreath fence as plotted by the surveyor also encroached some ten or fifteen feet on the SE¼ of the SW¼ of Sec. 11, none of which is described in Gilbreath's deed. Therefore, the court ordered the fence to be moved slightly southward at the center (at the section line) to conform to the afore-mentioned line and decreed that the court-appointed surveyor place, and mark as such, three judicial landmarks at the beginning, middle and end points of the boundary.

Appellant Prestwood's assignments of error charge, in essence, that the trial court erred in failing to declare the old fence found by the court-appointed surveyor to be the Carroll-Allen boundary fence and that he erred in fixing the boundary line as he did, according to the acreage description in Gilbreath's deed.

■ As already mentioned, this cause was submitted entirely on written depositions, documentary evidence, and the report of a court-appointed surveyor. There was no testimony taken ore tenus. When such is the case, no weight will be given the decision of the trial judge upon the facts, but this Court must review the evidence *de novo* and render such judgment as it deems just. Wade v. Miller, 208 Ala. 264, 93 So. 905 (1922); Fannin v. Trotter, 215 Ala. 17, 109 So. 102 (1926); Porter v. Roberson, 263 Ala. 294, 82 So.2d 244 (1955); Muscogee Const. Co. v. Peoples Bank & Trust Co., 286 Ala. 258, 238 So.2d 883 (1970).

We have been greatly handicapped in our review of the depositions in this case (as we assume was also the trial judge) by frequent references by witnesses such as: "along in there some place" . . . "down this way some" . . . "the line running through here" . . . "through the hollow here" . . . "up to this spot here" . . . "back out over here" . . . "the edge of the field there" . . . "it run along through there sommers . . . ." It is impossible to understand such references. Since the evidence was not heard orally by the trial court and we do not have the presumptions favoring his findings, we have read and reviewed the record the best that we could under these unfavorable circumstances.

The trial judge to whom the cause was submitted on the depositions, exhibits, etc., has done a commendable job. In his decree he made extensive findings of fact. His decree has been an aid to us in understanding the voluminous and oftimes con-

fusing and contradictory testimony and exhibits. Although we affirm the judgment of the trial court establishing the boundary line, we do not agree with all of his findings. Thus, we have, in accord with the applicable rule of review, carefully considered the evidence *de novo* and, after reading the entire record, reached our own conclusions.

The evidence establishes that the Gilbreath fence had been in existence for over ten years when Prestwood filed his suit in ejectment on March 15, 1962. We think the evidence clearly permits the inference that Gilbreath's father intended the fence to be put on the boundary line between his land and Prestwood's land. There was testimony that Prestwood sold the timber on his land to one Sammy Cash who, in turn, subcontracted the timber to others. The latter, on one occasion, cut through the Gilbreath fence and cut timber on the south side of the fence. It is not clear whether Cash told them the land on the other side also belonged to Prestwood or not. When Gilbreath learned of the cutting, he ordered Cash's men to stop, which they did. The time of this timber cutting is in dispute. Cash's testimony places the occurrence less than ten years after the building of the fence. Gilbreath's testimony places the occurrence more than ten years after the building of the fence.

In boundary line cases, this Court has held, viz.:

"Where the question is a disputed boundary line between coterminous owners, the statutory evidentiary prerequisites of adverse possession are inapplicable. Tit. 7, § 828, Code 1940; Duke v. Wimberly, 245 Ala. 639, 18 So.2d 554; Stokes v. Hart, 273 Ala. 279, 139 So.2d 300, and cases there cited.

"If a coterminous landowner holds actual possession of a disputed strip under a claim of right openly and exclusively for a continuous period of ten years, believing that he is holding to the true line, he thereby acquires title up to that line

* * *." Sylvest v. Stowers, 276 Ala. 695, 697, 166 So.2d 423, 426 (1964).

"* * * the claimant need show only dominion over the land claiming it adversely as to the whole world for the required time." Williams v. Davis, 280 Ala. 631, 633, 197 So.2d 285, 287 (1967). See also Cambron v. Kirkland, 287 Ala. 531, 253 So.2d 180 (1971).

"The rule of our cases is to effect that if a landowner holds actual possession of his coterminous neighbor's land for the required period although he believes he is holding only his own property, what he might have claimed had he known the location of the true line is immaterial. Smith v. Brown, supra; Smith v. Cook, supra; Barnett v. Millis, 286 Ala. 681, 246 So.2d 78 (1971). The question is whether one's acts speak clearly of an intent to possess his coterminous landowner's lands as his own.

"The erection and maintenance of a fence is one of the clearest symbols of possession. * * *". Kubiszyn v. Bradley, 292 Ala. 570, 298 So.2d 9 (1974).

"'In boundary line case, inclosure of valuable lands and appropriation thereof to beneficial enjoyment carries notice of adverse claim to adjoining owner, or puts him on inquiry.'" Rountree v. Jackson, 242 Ala. 190, 4 So.2d 743 (1941).

■ If adverse possession is to ripen into title, the possession must continue uninterrupted for the ten-year period. Snow v. Bray, 198 Ala. 398, 73 So. 542 (1916).

■■ Assuming, arguendo, that Cash's men cut the fence and the timber before the running of the ten-year period, the question then arises whether or not such action was legally sufficient to interrupt Gilbreath's possession. The applicable rules were set down at an early date by this Court, viz.:

"In respect to prescription at common law, it is said that to consummate it, it

**386**

must have been uninterrupted and peaceable, yet the interruption of mere trespassers, if they were unknown, will not affect the possession. But if they were known, and the trespasses have been repeated without legal proceedings being instituted, they then become what *Bracton* has called *legitimae interruptiones,* and are converted into adverse assertions of right; and if not promptly and effectually litigated, they defeat the claim of rightful prescription: and a mere threat of action for the trespasses without following it up, will not have the effect to preserve the right." (Citation omitted) Doe ex dem Farmer's Heirs v. Eslava, 11 Ala. 1028 (1847).

"It is equally true, that unbroken continuity of possession is an essential element of such adverse holding, except where it is interrupted by mere intruders, who are evicted by a prompt resort to legal remedies within a reasonable time." (Citations omitted) Beard v. Ryan, 78 Ala. 37 (1884).

"Acts of ownership . . ., were admissible in evidence as tending to show an interruption of the possession claimed to have been held by the defendants." Garrow v. Toxey, 171 Ala. 644, 54 So. 556 (1911).

Thus, the intrusion which will interrupt continuity of possession or require remedial legal action is one which is possessory in nature. In our judgment the single instance of cutting of timber by the third party Cash, which ceased upon Gilbreath's complaint, was not such an act of possession. Cf. Bradley v. Hall, 239 Ala. 544, 195 So. 883 (1940); Turnipseed v. Moseley, 248 Ala. 340, 27 So.2d 483 (1946); Williams v. Davis, 280 Ala. 631, 197 So.2d 285 (1967).

Although it may not be necessary to our decision in this case, we will observe that we agree with the trial judge who found the Carroll-Allen fence could not be located with any degree of certainty.

Therefore, we hold that the true boundary between Gilbreath and Prestwood is that certain fence erected by Gilbreath's father in the spring of 1951 and to which Gilbreath, and his father, have claimed for more than ten years. The trial judge's finding to the contrary is erroneous. The trial court's decree requires Gilbreath to move the fence slightly southward in order to conform to the acreage description in his deed. Gilbreath has not complained in brief or by cross-appeal of this aspect of the decree and, therefore, the decree of the trial court so fixing the boundary line will stand affirmed. We likewise affirm the trial court's fixing of costs—equally between Gilbreath and Prestwood, Prestwood to receive credit for his advancement of the costs of the court-ordered survey.

Affirmed.

HEFLIN, C. J., and COLEMAN, McCALL and JONES, JJ., concur.