ADAMS, Justice.
This is an adverse possession case. The sole issue is whether the flooding of land with water to form a reservoir is sufficient possession of the land to satisfy the common law requirements of adverse possession. We hold that such submersion does constitute possession, and we therefore affirm the summary judgment granted in favor of the defendant.
The land in question was originally owned by Uriah F. Jones and Annie F. Jones as tenants in common. Annie F. Jones died intestate. Her one-half interest in the land passed by intestate succession to her ten children as a V20 interest each.
Uriah F. Jones died testate. He devised his interest in the land to his son Elmer S. Jones and his daughter Clericy J. Jones. They each took a lk interest in the whole, in addition to the V20 interest already owned due to their mother’s death. Thus, Elmer and Clericy each owned a %o interest in the land in question.
In 1967, Alabama Power Company took a deed from Elmer S. Jones, his'wife Rachel I. Jones, and Clericy J. Jones, which transferred their interests in the land in issue to Alabama Power Company. The company thus obtained a ¾ interest in the land. Alabama Power Company had wanted to obtain fee simple title and in fact thought such ownership had been acquired through the deed.
The Company needed fee simple title to the land because it anticipated flooding the land in connection with the construction of the H. Neely Henry Dam. The filling of the H. Neely Henry Lake was scheduled to begin on December 15, 1965, and the reservoir was to reach full capacity on May 1, 1966. The land in question has been flooded at least since 1967 and remains so.
Six plaintiffs filed suit against Alabama Power, seeking $25,000.00 in damages. Their complaint alleged that the
*101 ... defendants have caused and are causing substantial loss of value and loss of enjoyment to plaintiffs’ rights to occupy said lands by flooding said lands, so as to illegally or wrongfully invade the interest of plaintiffs in said lands to their injury and damage; further, plaintiffs aver that said actions on the part of defendant have been intentional and willful.
The plaintiffs are five children and one grandchild of Annie F. Jones, each of whom claimed to own an interest in the land flooded by Alabama Power Company.[1] The plaintiffs’ interests were obtained through the intestate death of Annie F. Jones. In 1979, a decree was issued in a separate action which established the interests of the heirs of Annie F. Jones, including the present plaintiffs, to certain properties, including the land acquired by Alabama Power Company. The Company was not a party to that action.
Alabama Power Company defended the present action by asserting adverse possession, and filed a counterclaim for inverse condemnation, stating that if the Company should have to pay damages, the title to the property should be awarded to the Company. Summary judgment was granted in favor of Alabama Power Company, and this appeal followed. We affirm the summary judgment.
The Code of Alabama provides as follows:
(a)Adverse possession cannot confer or defeat title to land unless:
(1)The party setting it up shall show that a deed or other color of title purporting to convey title to him has been duly recorded in the office of the judge of probate of the county in which the land lies for 10 years before the commencement of the action;
(2) He and those through whom he claims shall have annually listed the land for taxation in the proper county for 10 years prior to the commencement of the action if the land is subject to taxation; or
(3) He derives title by descent cast or devise from a predecessor in the title who was in possession of the land.
(b) If the period during which the party’s deed or color of title has been on record, added to the time during which the deeds or color of title of those through whom he claims have been on record, amounts to 10 years, he may defend or prosecute on his adverse possession, and an inadvertent failure to list the land for taxation, any unintentional mistake in the description of the assessment or unintentional omission of any part of it from the assessment during the period of 10 years shall not bar the party of his action or defense on his adverse possession.
(c) This section shall not be construed to affect in any way a title perfect by adverse possession before the adoption of this Code, nor to deprive any person of his rights under sections 6-6-286 through 6-6-289, nor to affect cases involving a question as to boundaries between coterminous owners. (Code 1896, §§ 1541-1546; Code 1907, § 2830; Code 1923, § 6069; Code 1940, T. 7, § 828.)
Code, 1975, § 6-5-200. It is undisputed that Alabama Power Company meets requirements (a)(1) and (a)(2) above. The Company acquired a portion of the title to *102 the property through a warranty deed dated March 2, 1967, from Elmer, Rachel, and Clericy Jones. The deed was recorded in the probate court of St. Clair County, Alabama, on April 8, 1967. Additionally, Alabama Power Company has annually listed the land for taxation in St. Clair County since 1967. Thus, the statutory requirements of adverse possession are met.
In addition to the requirements of § 6-5-200, however, common law elements must be satisfied in order for Alabama Power Company to sustain a claim of adverse possession. Jones v. Jones, 423 So.2d 158 (Ala.1982). This Court has analyzed the requirements for adverse possession as follows:
In Alabama there are basically two types of adverse possession, these two types being statutory adverse possession and adverse possession by prescription. Adverse possession by prescription requires actual, exclusive, open, notorious and hostile possession under a claim of right for a period of twenty years.... Statutory adverse possession requires the same elements, but the statute provides further that if the adverse-possessor holds under color of title, has paid taxes for ten years, or derives his title by descent cast or devise from a possessor, he may acquire title in ten years, as opposed to the twenty years required for adverse possession by prescription. [Citations omitted.]
Kerlin v. Tensaw Land & Timber Company, 390 So.2d 616 (Ala.1980). Therefore, for Alabama Power Company to successfully assert the defense of adverse possession, its possession must be actual, exclusive, open, notorious, and hostile. The issue then, is whether the flooding of land exhibits these characteristics.
The land in issue has been flooded and submerged under the waters of the H. Neely Henry Reservoir since 1967. This is undisputed fact. This submersion is not temporary or intermittent; it is permanent. Alabama Power Company has maintained control of this property to the exclusion of others. Thus, the possession is “actual.” Furthermore, the permanent flooding of land is definitely “open, notorious and visible” to the landowner. The possession is “hostile” in that the Company claimed the land as its own, recorded its deed to the land, paid taxes on the land and generally treated the land as its own. Certainly, the flooding of land tends to exclude other persons’ possession so as to meet the requisite of being “exclusive.”
There are no Alabama cases which deal with the issue now on appeal. The appellant cites Harris v. Southeast Portland Lumber Co., 123 Or. 549, 262 P. 243 (1927), for the proposition that the mere flooding of land is not a possession which will ripen into title, regardless of the length of time of the submersion. We interpret the Harris case as meaning that flooding, unaccompanied by the requisite common law elements of adverse possession, could not ripen into title. We cite the following passage:
... the right of one riparian owner on a stream to flood the lands of an upper riparian owner may be acquired by the continuous use for ten years of a dam which raises the water of the stream and causes it to flow upon and to flood such lands; but before it can have that effect the possession and use of the dam must have been peaceable, open, and uninterrupted, and it must also have been adverse; that is, it must have been commenced and continued in a manner which indicated a claim of right, and these elements of adverse possession must have existed and continued during the full period of ten years....
123 Or. at 558, 262 P. at 245-246. In Harris, the prescriptive easement asserted by the defendant was denied because there was no evidence that the flooding was continuous or that it had lasted for ten years. Thus, Harris-is distinguishable from the case we now decide. After all, the land now in issue has been permanently submerged since 1967.
Alabama Power Company acquired a deed to the land herein at issue, recorded that deed, paid taxes on the land, and by *103 flooding the land as part of the H. Neely Henry Reservoir, exercised actual, exclusive, open, notorious, and hostile possession of the land.
For all of the above reasons, the judgment of the trial court is affirmed.
AFFIRMED.
FAULKNER, ALMON, SHORES and EMBRY, JJ., concur.

. The complaint named 22 heirs as necessary parties in interest to the action, in addition to the six plaintiffs. Alabama Power Company moved to add twelve of these parties as plaintiffs, or alternatively, as defendants, if they would not join as plaintiffs. This motion was granted in October 1981. When none of those parties joined as plaintiffs, Alabama Power Company moved to add all 22 necessary parties named in the complaint as defendants by way of amendment to the complaint. An order to this effect was issued on July 7, 1982.
Eight of the 22, Rachel Jones and her children, entered an appearance and moved to be realigned as plaintiffs. Service by publication was ordered in April 1983 on six of the 22 parties. According to Alabama Power Company, "those individuals who were located were served personally with notice of the suit. Those individuals who were not located have now been served by publication in the St. Clair County New Aegis. The procedural requirements for service of notice of this litigation upon all necessary parties have now been satisfied.”