This is an appeal from a judgment entered in a boundary line dispute between coterminous landowners. The plaintiffs/appellees, Demetrios and Betty Markos, as husband and wife, own and operate a restaurant and lounge on Highway 231 in Wetumpka, Alabama. The defendants/appellants, *Page 230 
Franklin Felix Strickland and others, own property adjacent to that of the Markoses. The Markoses filed suit against Strickland and the other defendants, alleging ownership of the driveway and parking lot of the restaurant by adverse possession.
After an ore tenus hearing and a personal inspection of the disputed property, the trial judge entered judgment for the plaintiffs consistent with their claim of adverse possession. From that judgment, the defendants appeal.
The disputed property (parcel one) and an undisputed property (parcel two) were originally owned by Maggie DeBardelaben as one tract. This tract was sold to J.D. and Minnie Sims in 1953 as one lot consisting of 1.20 acres. In 1956, the Simses divided the tract into two lots, selling parcel two to J.W. Adair, while retaining parcel one. Subsequently, parcel two was sold to two different purchasers prior to George and Jessie Poston's purchase of parcel two on June 13, 1967. On June 27, 1967, J.D. Sims sold property to Wilfred and Frank Strickland. It is contended by the Stricklands that parcel one was included in that conveyance. On October 2, 1968, Demetrios and Betty Markos leased, with an option to purchase, parcel two from the Postons. On April 14, 1972, the Markoses exercised their option to purchase parcel two. On June 24, 1977, the Markoses conveyed their interest in parcel two to Billy and Maureen Candle. In exchange therefor, the Candles executed a second mortgage in favor of the Markoses. On August 22, 1978, the Markoses foreclosed on the Candleses' property and thereby regained possession of parcel two.
The trial court's findings of fact and its reasons given for the judgment read as follows:
 "1. Plaintiffs and Defendants are coterminous property owners.
". . . .
 "4. Parcel # 1 (0.18 acres more or less) as described in Plaintiff's Exhibit # 12 was referred to during the course of the trial as the 'disputed property'. It is to parcel # 1 that both parties claim ownership and possession.
 "5. The Court finds that the Plaintiffs Demetrios C. Markos and Betty Markos and their predecessors in title have been [in the] open, actual, exclusive, notorious, and hostile possession of parcel # 1 as described in Plaintiffs' Exhibit # 12 for a period of more than 20 years prior to the filing of this present action. The Court finds that evidence of this possession by the Plaintiffs and their predecessors in title would include such possessory acts as:
 "a. Only the Plaintiffs cut the grass on parcel # 1.
 "b. Only the Plaintiffs had gravel 'hauled in' and 'placed' on parcel # 1.
 "c. Only the Plaintiffs or their predecessors in titled have added improvements to parcel # 1 (restaurant additions).
 "d. Only the Plaintiffs have paid ad valorem taxes on parcel # 1.
 "e. Only the Plaintiffs and their predecessors in title have generally exercised ownership as would comport with being the true owner of parcel # 1.
 "6. The Court further finds that the Defendants admitted that Plaintiffs and their predecessors in title have continuously used as a parking lot and driveway that portion of parcel # 1 around the back of the Wetumpka Restaurant since 1968 continuously and even before 1968. Additionally, at least eight independent witnesses testified that the Plaintiffs have used parcel # 1 as a parking lot and driveway since at least 1968. The parties stipulated that approximately 15 additional witnesses would testify consistent with the testimony of these eight independent witnesses.
 "7. The Court further finds that the Defendants have had actual knowledge of the Plaintiffs' acts [of] open, actual, exclusive, hostile and notorious possession of parcel # 1 for more than 20 years. [The defendants had this knowledge] at the time they purchased certain real property from J.D. Sims and Minnie L. Sims by deed dated June 27, 1967 (Plaintiffs' Exhibit # 1). *Page 231 
 "8. The Court further finds that the deed by which Defendants claim ownership to parcel # 1 was never accurately described in any survey by the Defendants' surveyor, Mr. Larry Speaks. The Court finds that Mr. Speaks' testimony was true when he described his surveys in words to the effect that he was simply making an 'attempt to balance' Plaintiffs' deed description.
 "9. The Court further finds that the true and accurate boundary line between the Plaintiffs' and Defendants' properties is described in Plaintiffs' Exhibit # 12, . . . which bears an approximate overall length of 226.35 feet more or less.
 "10. The Court further finds that the Defendants have a driveway for ingress [to] and egress [from] their property onto Highway 231. This driveway is denoted by 'curbing' located on the Highway 231 road frontage to the southwest of the disputed property. By [this] finding in favor of the Plaintiffs, Defendants are not denied access to their property.
 "11. The Court further finds that the Defendants and their predecessors in title have acquiesced and agreed to the location of the boundary line as claimed by the Plaintiffs for more than 10 years and specifically during the period of time 1956 through 1978. The Court finds that the Defendants did not raise any question of boundary line location to the Plaintiffs until approximately 1978. Therefore, the Court finds that it is not equitable for the Defendants to sit idly by and watch various improvements being made to parcel # 1 and expenses incurred in improving parcel # 1 and never question Plaintiffs' use and possession of parcel # 1 until 1978.
 "12. The Court further finds that except for questions raised by the Defendants in 1978, Defendants did nothing . . . to pursue their alleged claim to parcel # 1.
 "13. The Court further finds that the law of 'tacking' is applicable in this matter and Plaintiffs may 'tack' the possessory acts of their predecessors in title with regard to parcel # 1.
"FINAL JUDGMENT
 "Therefore, it is ordered, adjudged, and decreed that, as between the parties to this lawsuit and their successors, heirs, and assigns, Plaintiffs, Demetrios C. Markos and Betty Markos, are the owners of those lands shown as parcel # 1 and parcel # 2 in Plaintiffs' exhibit # 12 and which are more particularly described as follows:
"Parcel # 1
 "All that 0.18 acre parcel of land lying West of U.S. Highway 231 and being situated in the NE 1/ 4 S.E. 1/4 of Section 24, T18N, R18E, St. Stephens Meridian, Elmore County, Alabama and more particularly described as follows: Commence at the SE corner of Section 24, T18N, R18E; thence West a distance of 475.78 feet to a point; thence North 1503.37 feet to an iron pin at R/W widening point at Station 689-26.52 of said highway marking point of beginning of parcel herein described; thence a chord bearing and distance along and with a spiral curve R/W limits N 28° 58' 03" E-53.12 feet; thence leaving said R/W limits N 35° 84' 26" W a distance of 190.87 feet to an iron pin; thence S 78° 30' 34" W a distance of 27.04 feet to an iron pin; thence S 28° 58' 03" E a distance of 204.93 feet to an iron pin on R/W widening point; thence continue on widening S 37° 26' 47" E a distance of 21.42 feet to point of beginning, containing 0.18 acres more or less.
 "Parcel # 2 [This parcel not being in dispute here, we have omitted its description.]
As previously stated, this was a nonjury case. This Court has written a plethora of opinions setting out the standard of review in such cases: When evidence is presented ore tenus, the trial court's findings of fact will not be disturbed on appeal unless they are unsupported by credible evidence or are manifestly unjust. Nelson v. Styron, 524 So.2d 353 (Ala. 1988). The presumption of correctness accorded judgments in such cases is strengthened when the trial judge has viewed the property in dispute. Jones *Page 232 v. Henderson, 535 So.2d 90 (Ala. 1988). Moreover, this presumption of correctness is even stronger in adverse possession cases, because in such cases the evidence is generally difficult to weigh from the appellate court's vantage point. Seidler v. Phillips, 496 So.2d 714 (Ala. 1986).
Essentially there are two forms of adverse possession in Alabama; 1) adverse possession by prescription; and 2) statutory adverse possession. Adverse possession by prescription requires actual, exclusive, open, notorious, and hostile possession under a claim of right for a 20-year period.Fitts v. Alexander, 277 Ala. 372, 170 So.2d 808 (1965).
 " 'Statutory adverse possession requires the same elements, but the statute provides further that if the adverse possessor holds under color of title, has paid taxes for ten years, or derives his title by descent cast or devise from a possessor, he may acquire title in ten years, as opposed to the twenty years required for adverse possession by prescription. Code 1975, § 6-5-200. See, Long v. Ladd, 273 Ala. 410, 142 So.2d 660 (1962).'
 "Kerlin v. Tensaw Land Timber Co., 390 So.2d 616, 618 (Ala. 1980); see, also, Morgan v. Alabama Power Co., 469 So.2d 100 (Ala. 1985)."
Daugherty v. Miller, 549 So.2d 65, 66-67 (Ala. 1989).
With respect to statutory adverse possession, this Court inBrown v. Alabama Great Southern R.R., 544 So.2d 926, 931 (Ala. 1989), stated:
 "In Carpenter v. Huffman, 294 Ala. 189, 314 So.2d 65 (1975), Justice Jones summarized the applicability of our adverse possession statute, now Ala. Code 1975, § 6-5-200, as it relates to coterminous landowners:
 " 'The three alternative prerequisites 1) deed or other color of title, 2) annual listing of land for taxation, or 3) title by descent cast or devise from a predecessor, therefore, are not necessary to sustain a claim to title by a coterminous owner. Lay v. Phillips, 276 Ala. 273, 161 So.2d 477 (1964); Sylvest v. Stowers, 276 Ala. 695, 166 So.2d 423 (1964). That is to say, although the claimant is relieved of these three alternative conditions prescribed by [§ 6-5-200], he may still acquire title by the exercise of adverse possession for a period of ten years. Cambron v. Kirkland, 287 Ala. 531, 253 So.2d 180
(1971); Lay v. Phillips, supra; McNeil v. Hadden, 261 Ala. 691, 76 So.2d 160 (1954). However, the requirements that possession be open, notorious, hostile, continuous and exclusive are still applicable. Thompson v. Odom, 279 Ala. 211, 184 So.2d 120 (1966).'" (Emphasis added in Brown.)
See, also, McCollum v. Reaves, 547 So.2d 433, 435-36 (Ala. 1989), special concurrence by Jones, J., wherein the author stated that "[t]he statutory procedure for determining disputed boundaries between coterminous owners is found in [Code 1975,] § 35-3-1 et seq.; and the applicable period of limitations is found in the general statute of limitations on actions, [Code 1975] § 6-2-33(2)." It should be emphasized that the claimant has the burden of proving that all of the requisites of statutory adverse possession have been satisfied for a ten-year period. Lilly v. Palmer, 495 So.2d 522 (Ala. 1986).
 OPEN AND NOTORIOUS POSSESSION
Open and notorious possession are essential elements of adverse possession, because the landowner is thereby afforded notice of the adverse claim against his land. Thus, to satisfy these two elements, the claimant must provide evidence tending to show that his acts of dominion and control over the property were of such character and distinction as would reasonably notify the landowner that an adverse claim is being asserted against his land. Sparks v. Byrd, 562 So.2d 211 (Ala. 1990). In this regard, the evidence in the record tends to show that the plaintiffs and their predecessors in title did, in fact, openly and notoriously possess parcel one so as to place the landowner on notice of the adverse claims to the disputed property. See *Page 233 
Jake Strickland's deposition testimony, infra.
 HOSTILE POSSESSION
Another essential element of adverse possession relates to the claimant's intent to assert dominion and control over the disputed property. Reynolds v. Rutland, 365 So.2d 656 (Ala. 1978). The Reynolds court emphasized, however, that although "intent to claim the disputed strip is required, there is no requirement that the intent be to claim property of another, as such a rule would make adverse possession dependent upon bad faith. Possession is hostile when the possessor holds and claims property as his own, whether by mistake or willfully.Smith v. Brown, [282 Ala. 528, 213 So.2d 374 (1968)]." Id. at 657-58. In this regard, the record contains ample evidence to allow the trial court to conclude that the Markoses' use of the disputed property was hostile. See Jake Strickland's deposition testimony, infra.
 CONTINUOUS POSSESSION
To satisfy the element of continuous possession, the claimant must prove uninterrupted possession for 10 or more years.Prestwood v. Gilbreath, 293 Ala. 379, 304 So.2d 175 (1974). Within the context of continuous possession lies the doctrine of "tacking." That doctrine allows an adverse possessor to add — or "tack" — his time of possession onto that of a previous adverse possessor in order to reach the required statutory period. Sparks v. Byrd, supra. Before tacking is allowed, however, it must be proved that there exists a sufficient nexus, often called "privity," between the successive adverse claimants. Id.
The appellants insist that the trial court erred in applying the doctrine of tacking. Specifically, the appellants argue that the Markoses should not be allowed to tack the period of their possession onto that of their predecessors, Billy and Maureen Candles.
To resolve this particular issue, we must ascertain whether there exists privity of possession between a mortgagor and a mortgagee. So far as we can determine, this question is one of first impression in Alabama. The term "privity" is defined inBlack's Law Dictionary (5th ed. 1979), as a "[m]utual or successive relationship to the same rights of property."Ballentine's Law Dictionary (3d ed. 1969), defines "privity of possession as [a] continuity of actual possession, as between prior and present occupant, the possession of the latter succeeding the possession of the former under deed, grant, or other transfer, or by operation of law." Specifically relating to the question whether a mortgagee can tack on the possession of the mortgagor, 2 C.J.S. Adverse Possession § 156 at 874 (1972) states the principle that "the possession of themortgagor may be tacked to that of the mortgagee who acquiresthe land by foreclosure and that of his successors." (Emphasis added.) See also 7 R. Powell, Powell On Real Property, § 1014[2] (1987); 3 Am.Jur.2d Adverse Possession § 105 at 199 (1986).
In light of the foregoing discussion, we hold that the Markoses, as the mortgagees, can tack their possession onto that of their predecessors, the Candles, as the mortgagors. Thus, the Markoses have also satisfied the burden of proving continuous possession. See Jake Strickland's deposition testimony, infra.
Jake Strickland's deposition testimony, which was offered into evidence, reads, in part, as follows:
 "Q. When was the next time that you had a conversation with Mr. Markos about either encroachment or property line dispute?
 "A. There were two or three encounters with me and my brother — gravel being dumped on there by the county and the county spreading gravel on our property and cars parking on our property and whiskey bottles and beer bottles being thrown over on our property and white gravel or wash gravel being spread onto our property. Two or three times down through the years that we have had conversations in reference to the encroachment.
 "Q. What would Mr. Markos say when you would talk with him about this? *Page 234 
 "A. He would get violently mad, lose his temper and be completely uncontrollable.
 "Q. Did Mr. Markos or his customers ever stop doing this, as far as parking on your property?
"A. No, sir.
 "Q. They continue to do it all the way up to today?
"A. Yes, sir.
 "Q. And how long have they been parking on your property?
 "A. They have been using the property for — ever since the dirt bank was removed. When the dirt was removed, they used it for parking.
"Q. Is that as far back as 1968?
"A. It was before then.
 "Q. Are you saying, then, Mr. Strickland, that even before the Markoses owned the property, the people who owned it before them, that customers of the restaurant would use your property to park?
"A. Yes, sir.
 "Q. And you never have been successful in stopping that; have you?
"A. No, sir.
"Q. And you never have put up a fence; have you?
"A. No, sir.
 "Q. You never have put up a sign saying 'No Trespassing,' have you?
"A. No, sir.
 "Q. Even though you may have asked Jim [Demetrios] Markos to stop his customers from parking on your property, they continue to do so, don't they?
"A. Yes, sir.
"Q. All the way up to today?
"A. Yes, sir. Last night.
". . . .
 "Q. And people have been driving around the Wetumpka Restaurant continuously since then across what you allege to be your property?
"A. Yes, sir.
 "Q. And you never have filed a lawsuit against either the Markoses or someone else to prevent them from driving around across your property?
"A. No, sir.
". . . .
 "Q. Is it also true that there are indications that the Markoses have been out there maintaining your property in the sense of putting gravel out there on it?
"A. Yes, sir.
 "Q. And the Markoses have been out there picking up beer cans and beer bottles?
"A. Yes, sir, occasionally.
 "Q. And the Markoses have also been out there on your property picking up rubbish and trash?
 "A. I've seen some of their help and I have seen Betty out there.
 "Q. And looking at Plaintiffs' Exhibit Number 8, do you see the driveway and the area in that photograph where the Markoses' customers have been driving around their building since 1968?
"A. Yes, sir.
 "Q. And the area shown in that photograph is also the same area where you have seen the Markoses picking up trash, bottles and maintaining that area that you say is your property?
"A. Yes, sir.
". . . .
 "Q. They continue to use it today just like they were using it back in 1968, the Markoses; don't they?
"A. Yes, sir.
 "Q. Even though you have told them to stop, they have done it contrary to your will?
"A. Yes, sir.
 "Q. Isn't it also true that the Markoses have moved some of your equipment which you have placed out there on the property that is in dispute?
"A. Yes, sir.
 "Q. And they have moved some of your equipment off of this driveway area on occasions; haven't they?
"A. Yes, sir.
 "Q. And in fact, they have been doing that on any occasion when you have *Page 235 
placed your equipment on the land in dispute; have they?
"A. Yes, sir.
 "Q. Would they let your equipment stay there more than a day or two, or would they immediately go and move it off out of the disputed area?
"A. Generally, it was right away."
 EXCLUSIVE POSSESSION
To satisfy the final element of adverse possession, a claimant "must assert possessory rights distinct from those of others. The rule is generally stated that ' "[t]wo persons cannot hold the same property adversely to each other at the same time." ' Beason v. Bowlin, 274 Ala. 450, 454,149 So.2d 283, 286 (1962), quoting Stiff v. Cobb, 126 Ala. 381, 386,28 So. 402, 404 (1899). Exclusivity of possession 'is generally demonstrated by acts that comport with ownership.' Brown v.Alabama Great Southern R.R., 544 So.2d 926, 931 (Ala. 1989). These are 'acts as would ordinarily be performed by the true owner in appropriating the land or its avails to his own use, and in preventing others from the use of it as far as reasonably practicable.' Goodson v. Brothers, 111 Ala. 589,596, 20 So. 443, 445 (1896)." Sparks v. Byrd, supra, at 215.
The definition of "exclusive possession," as found in 2 C.J.S. Adverse Possession § 54 at 726-27, reads as follows:
 " 'Exclusive possession' means that claimant must hold possession of the land for himself, as his own, and not for another, or must maintain exclusive dominion over the property and appropriation of it to his own use and benefit. To establish exclusive possession, there must be an intention to possess and hold land to the exclusion of, and in opposition to, the claims of all others, and the claimant's conduct must afford an unequivocal indication that he is exercising dominion of a sole owner. Exclusiveness essential to adverse possession may or must be shown by acts which comport with ownership and would ordinarily be done by an owner for his own use to the exclusion of others, and all such acts must be considered collectively in determining the sufficiency of possession. Exclusiveness of possession is often evidenced by the erection of physical improvements on the property, such as fences, houses or other structures, and, in their absence, substantial activity on the land is required."
The same principle is stated in different language in 4 H. Tiffany, The Law of Real Property, § 1141 at 735-36 (3d ed. 1975):
 "In order that one may acquire rights in land by possession for the statutory period, the possession must, it is frequently said, be exclusive. It must be exclusive of the true owner and also of third persons. If the true owner is on the land as owner, the possession is, in the eye of the law, in such owner, and another person who is on the land has not only no adverse possession, but no possession whatsoever . . . If, however, the true owner is shown to be on the land merely as a licensee, not asserting, by word or act, any right of ownership or possession, his presence on the land does not amount to an actual possession, and the possession may properly be attributed to him who is on the land exercising or claiming exclusive control thereof. In the same vein, acts of the record owner with respect to the premises indicative of ownership, but not of possession, impair the exclusiveness of adverse possession."
With respect to the element of exclusivity, there was a considerable amount of contradictory evidence. Jake Strickland and others testified that the Stricklands had used the property to store various forms of equipment (a circus trailer, screw conveyors, trusses, etc.). There was also testimony that the Stricklands had given permission to a local civic club to use the disputed property for a turkey shoot. The Stricklands also place great emphasis on Betty Markos's testimony at trial. On cross-examination, she conceded that she had seen Jake Strickland on the disputed property approximately 100 times since 1978. She also admitted to having seen Wilfred Strickland on the disputed property approximately 25 times since 1978. She further admitted to having seen other members of the Strickland family on the disputed property various times since 1978. *Page 236 
A review of Betty Markos's testimony reveals, however, that she was merely referring to an egress-ingress situation. On redirect examination, Betty Markos was asked the following question: "But the Stricklands' use of parcel one, has it ever been for anything other than egress or ingress?" Betty Markos responded by saying "No, sir." Furthermore, the Markoses produced numerous witnesses who testified that they had never seen the Stricklands' equipment on the disputed property. The Markoses also produced witnesses who testified that the disputed property had been exclusively used for a driveway and parking lot for the Wetumpka restaurant.
Therefore, we find credible evidence of record from which the trial court could have found that the Markoses exercised exclusive possession over the disputed property.
A review of the record reveals evidence to allow the trial judge to conclude that the Markoses have proven all the elements of statutory adverse possession. This Court will not weigh the evidence and set aside a judgment merely because the trial judge could have drawn different inferences or conclusions or because another result is more desirable.
As this Court explained in Southern Rock Products Co. v.Board of Zoning Adjustment of City of Trussville, 282 Ala. 186,190, 210 So.2d 419, 422 (1968):
 "There is a strong presumption in favor of the correctness of the court's finding on questions of fact [if the findings are supported by the evidence], and we are disinclined to draw a different conclusion from the same [evidence] — particularly when [that evidence is] before us in a cold record."
Accordingly, the judgment is due to be affirmed.
AFFIRMED.
MADDOX, SHORES, HOUSTON and KENNEDY, JJ., concur.