James Casey and Stephen Earl Murphree sued Marshall S. Clarke, Dana Joy Clarke, Merchants Bank, and Compass Bank to quiet title to a strip of land approximately 19 feet wide (disputed strip), which bordered Interstate 65. See Appendix "A". James and Murphree also asserted a claim of trespass and an easement by implication, and they requested reformation of their deed to correct the section number. Marshall and Dana answered and counterclaimed for trespass.
Following oral proceedings, the trial court entered a judgment, finding that Marshall and Dana owned the disputed strip by adverse possession. The trial court also revised James and Murphree's deed and corrected the section number. James and Murphree filed a motion for a new trial, which the trial court denied.
James and Murphree appeal, contending that the trial court erred in finding that Marshall and Dana owned the disputed strip by adverse possession; in denying their request to quiet title; and in failing to find that they had an easement by implication. This case is before this court pursuant to § 12-2-7(6), Ala. Code 1975.
A coterminous landowner in an adverse possession case must show that his or her possession was "actual, hostile, open, notorious, exclusive, and continuous for 10 years." Rice v. McGinnis,653 So.2d 950 (Ala. 1995). A claimant establishes "exclusive possession" as follows: *Page 160 
 "`"`[T]here must be an intention to possess and hold land to the exclusion of, and in opposition to, the claims of all others, and the claimant's conduct must afford an unequivocal indication that he is exercising dominion of a sole owner. Exclusiveness essential to adverse possession may or must be shown by acts which comport with ownership and would ordinarily be done by an owner for his own use to the exclusion of others, and all such acts must be considered collectively in determining the sufficiency of possession. Exclusiveness of possession is often evidenced by the erection of physical improvements on the property, such as fences, houses, or other structures, and, in their absence, substantial activity on the land is required.'"'"
Johnson v. Coshatt, 591 So.2d 483, 484-85 (Ala. 1991) (quoting Strickland v. Markos, 566 So.2d 229, 235 (Ala. 1990) (quoting 2 C.J.S. Adverse Possession § 54 (1974))).
The record reveals the following pertinent facts: On November 22, 1960, W.T. Casey and his wife, Eula Mae Casey, sold and deeded approximately one and one-half acres to Frank Johnson and his wife. Thereafter, the construction of Interstate 65 divided the Caseys' remaining property into two pieces. On October 3, 1978, Frank Johnson, then a widower, deeded his property to his daughters, Dean Evans and Opal M. White. On February 23, 1980, Johnson entered into a land sale contract with Terry Reid and Dana Reid, purporting to sell the Reids the same property that Johnson had conveyed to his daughters in 1978.
In July 1980, the Caseys deeded to their son, James, and his wife that portion of their property on the west side of Interstate 65, behind the property they conveyed to Johnson in 1960. James's deed included the disputed strip, which was an old road, approximately 19 feet wide. The disputed strip is located between Johnson's property and the chain-link fence along Interstate 65.
In 1982, James showed Terry Reid the disputed strip and informed Terry that he owned that property. Terry Reid did not dispute James's ownership. James gave Terry Reid permission to mow and clean up the disputed strip. James's wife died in 1984. In April 1986, after Terry Reid and Dana divorced, Dana received the parties' interest in their property. In May 1987, Terry Reid quitclaimed his interest to Dana. Dana applied for a loan from Peoples Bank of Cullman, using the property as security. On May 28, 1987, at the request of the bank, James Baldy prepared a survey of Dana's property, which showed that her property extended to the chain-link fence along Interstate 65. Thereafter, Dana married Marshall Clarke.
On June 3, 1987, Johnson's daughters, Dean Evans and Opal M. White, executed a deed conveying the property to Dana; however, the metes and bounds description in that deed did not match the description in Johnson's 1960 deed. On June 5, 1987, Dana obtained a loan from Peoples Bank of Cullman, secured by a mortgage on her property. Subsequently, Marshall and Dana refinanced the loan with Compass Bank. Thereafter, Marshall and Dana again refinanced their loan with Merchants Bank. One of the refinancing banks required a second survey of the property, which showed that Marshall and Dana's property extended to the chain-link fence along Interstate 65.
On November 14, 1994, at James's request, Lynn Lavell Taylor surveyed James's property. On November 29, 1994, James executed a deed, conveying the property to his grandson, Stephen Earl Murphree, and to himself, with right of survivorship. On March 14, 1997, Dean Evans and Opal M. White executed a corrected deed, which corrected the metes and bounds description of the property conveyed to Dana to match the description in the 1960 deed from the Caseys to Johnson.
James testified that he and his father walked the property in approximately 1980. He stated that, since 1980, he visits his property at least two or three times a year, using the disputed strip to access his property. James also stated that through the years, he had seen Dana and others living in the Johnson house and would go to the house to tell them that he was going back to his property. He testified that he told Marshall and Dana, the Johnsons, and his family that he owned the disputed strip. *Page 161 
In 1994, Marshall approached James and Murphree about purchasing their property. James informed Marshall that he was not interested in selling the property. He also told Marshall that he intended to install a water line down the disputed strip, to build a driveway, and to build a house on the property. James testified that Marshall stated that he was not going to build a house on the property. In 1996, Marshall and Dana, on the advice of their attorney, erected a fence across the disputed strip and posted a "no trespassing" sign. James further stated that Marshall and Dana told Murphree and him that they could not get to their property.
Walter Euless Johnson, Johnson's son, testified that he was 13 years old when his father bought a piece of property from the Caseys. He stated that his father built a house on the property and that they moved onto the property. Walter moved out of his parents' home when he was seventeen; however, he visited his parents as long as they lived on the property. He stated that the Caseys owned the property behind and to the east of his father's property. Walter remembered when Interstate 65 was built and stated that his father's property did not extend to the Interstate. He stated that the Caseys owned a strip of property between his father's property and Interstate 65, which they used to access their property behind his father's property. Walter further stated that his father never claimed to own the disputed strip.
Terry Reid testified that he and Dana were married in 1978, and in 1980, they contracted to buy Johnson's property. He stated that between 1980 and 1986, he had seen James come out to his property and that James told him that he owned the property in back and the disputed strip. Terry Reid did not claim any of the property owned by James.
Lynn Lavell Taylor testified that in November 1994, he surveyed James's property, using the metes and bounds description in James's deed, in Johnson's deed, and in the deed from Johnson to his daughters. Taylor stated that James's deed described the wrong section number. Taylor's survey reveals that Marshall and Dana's property does not include the disputed strip.
James Michael Hillman, a licensed surveyor who was Marshall and Dana's expert, testified that Taylor's survey was incomplete, because, he said, Taylor did not "close the whole section." However, he did admit that Taylor's survey was accurate. On cross-examination, Hillman admitted that Baldy's survey was inaccurate, because Baldy did not use the metes and bounds descriptions in W. T. Casey's deed to Johnson and in Johnson's deed to his daughters.
Dana testified that since she purchased the property, she had mowed the disputed strip. She testified that until 1994, she did not know that her ex-husband had walked the property with James or that James owned the property in back of her property. Based on the surveys of her property, Dana thought her property extended to the Interstate fence. Dana testified that she was present in 1994 when another neighbor offered to buy James's property, but that she did not offer to buy his property. She also stated that she had never seen James and Murphree use the disputed strip to drive to their property. Dana testified that she and her husband parked their vehicles and kept their lawnmowers on the disputed strip.
On cross-examination, Dana admitted that she may have been at work when James, his wife, or Murphree went to the property. She stated that after speaking to an attorney, she and Marshall erected a fence across the disputed strip. Dana admitted that she knew before she erected the fence that James claimed to own the disputed strip and that on several occasions he had mentioned that to her.
Based upon our review of the record, we conclude that the record is devoid of any evidence that Dana claimed the disputed strip before 1987. Although Terry Reid cut the grass on the disputed strip, he did so with the knowledge that he neither owned nor claimed that property. Therefore, Terry Reid's actions cannot be construed as adversely possessing the disputed strip. Additionally, prior to 1987, Dana did not own Johnson's property, and, therefore, was not a coterminous landowner. *Page 162 
After 1987, Dana became a coterminous landowner when she used and claimed the disputed strip. However, the disputed strip was also used by James and Murphree; therefore, Dana and Marshall's possession of the disputed strip did not become exclusive until 1996, when they erected a fence across the disputed strip. Accordingly, because this action was filed before 10 years of exclusive possession had occurred, we conclude that Marshall and Dana did not establish ownership by adverse possession. Therefore, the judgment of the trial court is not supported by credible evidence. Rice, supra.
We next address whether the trial court erred in failing to quiet title to the disputed strip in James and Murphree.
"In an action to quiet title, the appropriate test is to determine which among the parties claiming right of title and possession holds superior title." Gardner v. Key, 594 So.2d 43,44 (Ala. 1991) (citations omitted). James and Murphree's deed includes the disputed strip, and they have paid the property tax on the entire property. Marshall and Dana's deed does not include the disputed strip. Accordingly, we conclude that James and Murphree hold superior title to the disputed strip and that, therefore, the trial court erred in failing to quiet title to the disputed strip in James and Murphree. Our resolution of the first two issues makes James and Murphree's third issue moot.
The judgment of the trial court is reversed and this cause is remanded for entry of a judgment consistent with this opinion.
The foregoing opinion was prepared by Retired Appellate Judge L. Charles Wright while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Ala. Code 1975.
REVERSED AND REMANDED WITH DIRECTIONS.
Robertson, P.J., and Yates and Crawley, JJ., concur.
Monroe and Thompson, JJ., concur in the result. *Page 163 
APPENDIX A *Page 164