BRYAN, Judge,
dissenting.
I respectfully dissent. We can affirm “the decision of the trial court if it is right for any reason, even one not presented by a party or considered or cited by the trial judge....” Ex parte Wiginton, 743 So.2d 1071, 1072-73 (Ala.1999). In my opinion, the judgment of the trial court in the case now before us is due to be affirmed on the ground that the Cagles failed to prove by clear and convincing evidence that their possession of the disputed parcel was open and notorious for the period necessary to satisfy the requirements of statutory adverse possession, adverse possession by prescription, or the hybrid type of adverse possession applicable to coterminous landowners in boundary-line disputes.
The undisputed evidence established that the Hammonds owned record title to the disputed parcel and that the Cagles did not'own record title to it. Therefore, in order to prevail in this action, the Ca-gles bore the burden of proving that they owned the disputed parcel by virtue of (1) statutory adverse possession, (2) adverse possession by prescription, (3) the hybrid type of adverse. possession applicable to coterminous landowners in boundary-line *159 disputes, or (4) an agreement to move the common boundary line from the line evidenced by the deeds to the eastern boundary of the disputed parcel plus possession of the disputed parcel by the Cagles or their predecessors in title for 10 years. See Kerlin v. Tensaw Land & Timber Co., 390 So.2d 616, 618-19 (Ala.1980). In Kerlin, the supreme court explained:
“In Alabama there are basically two types of adverse possession, these two types being statutory adverse possession and adverse possession by prescription. Adverse possession by prescription requires actual, exclusive, open, notorious and hostile possession under a claim of right for a period of twenty years. Statutory adverse possession requires the same elements, but the statute provides further that if the adverse possessor holds under color of title, has paid taxes for ten years, or derives his title by descent cast or devise from a possessor, he may acquire title in ten years, as opposed to the twenty years required for adverse possession by prescription.
“Boundary disputes are subject to a unique set of requirements that is a hybrid of the elements of adverse possession by prescription and statutory adverse possession. In the past there has been some confusion in this area, but the basic requirements are ascertainable from the applicable case law. In a boundary dispute, the coterminous landowners may alter the boundary line between their tracts of land by agreement plus possession for ten years, or by adverse possession for ten years. The rules governing this type of dispute are, in actuality, a form of statutory adverse possession.”
390 So.2d at 618-19 (citations omitted).
In the case now before us, no evidence was introduced establishing the existence of an agreement by the parties or their predecessors in title to move the common boundary line evidenced by the deeds in their chains of title. Therefore, in order to prevail, the Cagles had to establish the essential elements of statutory adverse possession, adverse possession by prescription, or the hybrid type of adverse possession applicable in boundary-line disputes. See Kerlin. Proof by clear and convincing evidence of open and notorious possession for the prescribed period is essential to establish all three types of adverse possession. See Kerlin, 390 So.2d at 618 (“Adverse possession by prescription requires actual, exclusive, open, notorious and hostile possession under a claim of right.... Statutory adverse possession requires the same elements.... ” (emphasis added)); Cooper v. Cate, 591 So.2d 68, 70 (Ala.1991) (“It is well settled that a party claiming title to land by adverse possession has a heavy burden and must present clear and convincing proof of such possession. In cases involving coterminous landowners, a party must show that his possession of the land in dispute was actual, hostile, open, notorious, exclusive, and continuous for a 10-year period. We also note that the presumption is in favor of the record owner.” (citations omitted; emphasis added)); and Boren v. Roberts, 423 So.2d 208, 210 (Ala.1982) (“Under the law of Alabama, a person claiming title by adverse possession against the holder of legal title has the burden of proving actual, clear, definite, positive, notorious, open, continuous, adverse, and exclusive possession of a definite tract of land under a claim of right for the time prescribed by law, and such possession must be shown by clear and convincing evidence.” (emphasis added)).
“Open and notorious possession are essential elements of adverse possession, because the landowner is thereby afforded notice of the adverse claim against his land. Thus, to satisfy these two *160 elements, the claimant must provide evidence tending to show that his acts of dominion and control over the property were of such character and distinction as would reasonably notify the landowner that an adverse claim is being asserted against his land.”
Strickland v. Markos, 566 So.2d 229, 232 (Ala.1990) (emphasis added).
In the case now before us, the evidence indicating that the Cagles exercised possession of the disputed parcel consisted of evidence establishing (1) that an original wire fence (“the original fence”) had been strung in the tree line along the eastern boundary of the disputed parcel sometime before Cory Robinson, the Cagles’ tenant, had begun leasing the parcel now owned by the Cagles 40 to 45 years before trial, (2) that someone had torn down the original fence three or four years before the trial and Robinson had subsequently erected a new wire fence (“the new fence”) in the same location using steel or iron fence posts, and (3) that Robinson’s cows had grazed on the disputed parcel during the 40 to 45 years that Robinson had leased the parcel now owned by the Cagles. However, there was no evidence indicating who erected the original fence or why they erected it. Moreover, there was evidence indicating that the original fence had been strung using a line of trees instead of fence posts and that no tree line existed along the common boundary line evidenced by the deeds in the Cagles’ and the Ham-monds’ chains of title. In addition, Rabón Cagle testified that “a long time ago,” i.e., when the original fence was erected, it was customary to use a tree line to string fence wire instead of erecting fence posts for that purpose:
“Q. Point out where you are talking about, the fence.
“A. There is big pine trees, you know, 75 years old. And you can see on them big pines that the barbed wire is about halfway in the pine trees.
“Q. All right.
“A. Long time ago, they would just go from tree to tree. Then they got to where they would stari using posts.
“[The Cagles’ attorney]: We’ll mark these two photographs. We will do this one as # 6.
“Q. When you are talking about the fence line, are you talking about this line that runs this way?
“A. Yes, sir.
“Q. I show you what we have marked for identification as Plaintiffs’ Exhibit #6.
“A. Yes, sir.
“Q. Is that one of those pine trees?
“A. Yes, sir.
“Q. That picture truly and accurately depicts the condition of the fence in the middle of that tree?
“A. Yes, sir.”
(Emphasis added.)
Thus, for all that appears in the record, the original fence could have been erected by the Hammonds’ predecessors in title rather than the Cagles’ predecessors in title; the original fence could have been erected by the Hammonds’ predecessors in title for some purpose other than marking the boundary line between their parcel and the parcel now owned by the Cagles, i.e., to keep them livestock from wandering from them parcel onto the parcel now owned by the Cagles; and the original fence could have been erected along the tree line instead of the boundary line established by the deeds because (1) it was not intended to mark the boundary line and (2) it could be erected along the tree line without erecting fence posts. Because the Cagles did not negate those possibilities, the evidence regarding the existence of the original fence did not establish that *161 the possession of the disputed parcel exercised by the Cagles and their predecessors in title was of such a character as to reasonably notify the Hammonds and their predecessors in title that the Cagles or them predecessors in title were making an adverse claim to ownership of the disputed parcel. See Strickland, supra. Therefore, it did not establish that the possession of the disputed parcel exercised by the Ca-gles and their predecessors in title constituted open and notorious possession. Id.
Robinson testified that he erected the new fence using steel or iron fence posts after someone had torn down the original fence three or four years before the trial. Although Robinson’s erection of that new fence could have evidenced open and notorious use of the disputed parcel, the new fence had not been in place for the period necessary to satisfy the requirements of statutory adverse possession, adverse possession by prescription, or the hybrid type of adverse possession applicable in boundary-line disputes. See Kerlin, supra.
Robinson testified that his cows grazed on the disputed parcel as well as on the Cagles’ parcel, but he did not testify regarding how often they grazed on the disputed parcel. For all that appears in the record, the grazing on the disputed parcel could have occurred only once a year or once a decade. Without evidence describing how often the grazing occurred, the Cagles failed to prove that the grazing was of such a character as to reasonably give the Hammonds and their predecessors in title notice that the Cagles and their predecessors in title were making an adverse claim to ownership of the disputed parcel. Therefore, the evidence regarding grazing did not establish that the Cagles’ possession of the disputed parcel was open and notorious. See Strickland, supra.
Accordingly, I would affirm the judgment of the trial court on the ground that the Cagles failed to prove by clear and convincing evidence that their use of the disputed parcel was open and notorious for the period necessary to satisfy the requirements of statutory adverse possession, adverse possession by prescription, or the hybrid type of adverse possession applicable in boundary-line disputes.